THE STATE, EX REL. EATON CORPORATION, *v.* LANCASTER ET AL. (TWO CASES.)

THE STATE, EX REL. GCC BEVERAGES, INC., APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT, ET AL.

THE STATE, EX REL. FIRESTONE TIRE & RUBBER COMPANY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT, ET AL.

[Cite as State, ex rel. Eaton Corp., *v.* Lancaster (1988), 40 Ohio St. 3d 404.]

(Nos. 87-622, 87-1887, 88-205 and 88-1312—Submitted September 28, 1988—Decided December 30, 1988.)

*Willacy & LoPresti* and *Aubrey B. Willacy,* for relator in case Nos. 87-622 and 87-1887.

*Arter & Hadden, Louis J. Licata* and *Douglas M. Bricker,* for appellee in case No. 88-205.

*Buckingham, Doolittle & Burroughs, John N. Childs* and *Timothy C. Campbell,* for appellee in case No. 88-1312.

*Anthony J. Celebrezze, Jr.,* attorney general, *Helen M. Ninos* and *Merl H. Wayman,* for respondents, members of Industrial Commission, and appellant, Industrial Commission, in case Nos. 87-622 and 88-205, respectively; *Jeffery W. Clark, Merl H. Wayman* and *James A. Barnes,* for respondents, members of Industrial Commission, in case No. 87-1887; *Dennis L. Hufstader,* for appellant, Industrial Commission, in case No. 88-1312.

*Zwick Law Offices Co., L.P.A.,* and *Victoria Z. Klapp,* for claimant in case No. 87-622.

*Webster M. Lonas, Jr.,* for claimant in case No. 87-1887.

*Stewart Jaffy & Associates Co., L.P.A.,* and *Stewart R. Jaffy,* urging denial of the writs in case No. 87-622, for *amicus curiae* Ohio AFL-CIO.

*Vorys, Sater, Seymour & Pease, Russell P. Herrold, Jr.,* and *Robert A. Minor,* urging affirmance in case No. 88-205, for *amicus curiae* Ohio Manufacturers' Association.

*Per Curiam.* In each of the cases before us, continued payment of temporary total disability compensation was ordered despite a finding that the claimant's condition had become permanent. The commission concedes that in each case, compensation was continued pursuant to a long-standing commission policy, as contained in a memorandum of October 21, 1987. Specifically, the policy provided that hearing officers, in their discretion, could continue temporary total benefits, despite evidence of permanency, where the claimant had applied for permanent total disability compensation and appeared to meet the permanent total disability criteria.

We are presently asked to determine the validity of this policy. Upon review, we find it to be both substantively and procedurally invalid.

R.C. 4123.56, in addressing temporary total disability, provided in pertinent part:

"* * * [P]ayment shall not be made for such period when any employee has returned to work or when an employee's treating physician has made a written statement that the employee is

capable of returning to his former position of employment.

"After two hundred weeks of temporary total disability benefits, the claimant shall be scheduled for an examination by the industrial commission medical department for an evaluation to determine whether or not the temporary disability has become permanent."

In *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 632, 23 O.O. 3d 518, 519, 433 N.E. 2d 586, 588, we interpreted R.C. 4123.56 as follows:

" 'An employee is entitled to be paid temporary total disability when injured and unable to work until one of the following three things occur[s]: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to his former position of employment, or (3) *the temporary disability has become permanent.*' " (Emphasis added.)

*Ramirez* thus contemplates that compensation paid pursuant to R.C. 4123.56 would, if the other statutory requirements were met, remain payable until the temporary disability became permanent without the statute specifically so stating.

In *State, ex rel. Bryant,* v. *Pinkerton's, Inc.* (1986), 24 Ohio St. 3d 79, 24 OBR 226, 493 N.E. 2d 544, and *Vulcan Materials Co.* v. *Indus. Comm.* (1986), 25 Ohio St. 3d 31, 25 OBR 26, 494 N.E. 2d 1125, we held that the permanency question could be entertained at any point during a claimant's receipt of temporary total compensation. *State, ex rel. Dresser Industries,* v. *Indus. Comm.* (Aug. 21, 1986), Franklin App. No. 85AP-212, unreported, and *State, ex rel. Lynn,* v. *Indus. Comm.* (July 15, 1986), Franklin App. No. 85AP-351, unreported, specifically stated that a finding of permanency precluded the payment of temporary total compensa-

tion. As noted in *Lynn,* " '* * * [t]emporary total disability means a disability which is not permanent. * * * [T]he purpose of temporary total disability is not to compensate for those injuries which are diagnosed as permanent. * * *" *Id.* at 4. We agree.

The commission policy attempts to enlarge the class of claimants currently eligible for temporary total compensation. In *State, ex rel. Ashcraft,* v. *Indus. Comm.* (1984), 15 Ohio St. 3d 126, 15 OBR 276, 472 N.E. 2d 1077, we struck down a similar attempt to alter this class, invalidating a resolution that declared incarcerated claimants ineligible for temporary total disability compensation. Despite our acknowledgement that "[t]he policy to be served by the resolution is not repugnant to the purposes of the Workers' Compensation Act * * *" (*id.* at 129, 15 OBR at 278, 472 N.E. 2d at 1079), we held that "[s]uch a policy decision * * * must emanate from the General Assembly."

The problem the commission policy seeks to redress is caused by the sometimes lengthy interval between the decision to terminate temporary total compensation due to permanency and the decision to grant or deny permanent total disability. While hearing officers have initial authority to terminate temporary total compensation, a claimant must wait for a commission determination of his permanent total disability application. While such payments are retroactive, there is a potential for hardship. The commission would appear to be in the best position to remedy this situation. One solution would be to have the issue of continued temporary total benefits heard simultaneously with the claimant's permanent total disability motion. Eligible claimants could then begin to receive permanent total disability compensation immediately upon termination of

temporary total benefits, thus eliminating the current delay.

An examination of the Ohio Revised Code reveals no language that confines jurisdiction over permanent total disability matters exclusively to the commission. R.C. 4121.35(B)(1) specifically provides otherwise by permitting staff hearing officers to hear permanent total disability applications. Unfortunately, where determinations as to temporary total benefits are made at the district hearing level, utilization of staff hearing officers in a permanent total disability capacity will merely reduce, not eliminate, the time delay at issue. The problem could be resolved, however, by the commission's authorization of staff hearing officers to directly consider any application to terminate temporary total compensation when an application for permanent total compensation is pending.

Moreover, R.C. 4121.06(A) permits the commission to internally delegate to a commission deputy "[a]ny investigation, inquiry, or hearing which the commission is authorized to hold or undertake * * *." "Deputy," pursuant to R.C. 4121.01(F), may be "any person employed by the industrial commission, * * * who possesses special, technical, scientific, managerial, professional, or personal abilities or qualities in matters within the jurisdiction of the commission, and who may be engaged in the performance of duties under the direction of the commission calling for the exercise of such abilities or qualities." Thus, R.C. 4121.06(A) appears to afford the commission additional flexibility in implementing a mechanism whereby temporary total and permanent total questions are concurrently decided. Such a solution appears fair and sensible to all concerned: not only does it reduce temporary financial hardship to the claimant, but it also keeps the State Insurance Fund or self-insured employer from, in effect, subsidizing the commission's seeming inability to process permanent total disability applications more expeditiously.

We anticipate that a fair and workable solution will be implemented immediately. Realistically, however, this will not occur overnight. We also realize that a substantial number of claimants are receiving temporary total compensation pursuant to the commission's policy. Recognizing this, we decline to apply this policy so as to terminate the temporary total benefits of such claimants before the commission has had an opportunity to resolve the time delay problem, and thus hold our decision to be prospective. In so holding, however, we direct the commission, within ninety days of this decision, or as soon thereafter as is practicable, to hold hearings to determine the eligibility of these claimants for total disability benefits.

We also find that the commission policy, which was in the form of an internal memorandum to hearing officers, was not promulgated in accordance with Ohio's Revised Code and Administrative Code.

R.C. 4121.30(A) requires:

"All rules governing the operating procedure of the bureau of workers' compensation, regional boards of review, and the industrial commission shall be adopted pursuant to Chapter 119. of the Revised Code, except that determinations of the bureau, district hearing officers, a regional board of review, a staff hearing officer, or the commission, *with respect to an individual employee's claim to participate in the state insurance fund* are governed only by Chapter 4123. of the Revised Code." (Emphasis added.)

A literal reading of this statute appears to exempt only "[right] to participate" matters from R.C. Chapter

119 requirements. The present cases do not involve a question of the claimants' right to participate, but involve the extent of disability.

Moreover, R.C. 119.01(A) reads in part:

"Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code *with respect to all matters of adjudication * * *.*" (Emphasis added.)

R.C. 119.01(D) defines "adjudication" as "the determination *by the highest or ultimate authority of an agency* of the rights, duties, privileges, benefits or legal relationships of a specified person * * *." (Emphasis added.)

A finding by a district hearing officer on the issue of continued temporary total compensation is not, in view of the right to appeal under R.C. 4123.516, a determination "by the highest or ultimate authority" of the commission. Thus, procedures governing this area are not exempt from R.C. Chapter 119 requirements.

R.C. 4121.31(A)(2) also requires the commission to adopt rules that "set forth any general policy and the principal operating procedures of the bureau or commission, including * * * [p]rocedures for decision-making[.]" We find the policy in question to be a "[p]rocedure for decision-making." R.C. 4121.32(C)(12) specifically enumerates matters pertaining to temporary total compensation as included within the scope of "guidelines and bases for decision-making." We conclude that the policy in question was thus subject to the rule-adoption requirements of R.C. 4121.31.

In striking down the commission policy, we must next address the employers' requests for relief. For the reasons to follow, we find mandamus, but not prohibition, to be a proper remedy.

Relator Eaton contends that the memorandum policy is an exercise of legislative function beyond the scope of power conferred on the commission by law. Relator requests a writ of prohibition to forbid the commission from further reliance on the policy. We decline to issue such a writ, finding that the prerequisites for allowing such a writ have not been met.

The writ of prohibition is "an extraordinary remedy, to be entertained with caution, and is to be exercised in the sound discretion of the court." *State, ex rel. Gilligan*, v. *Hoddinott* (1973), 36 Ohio St. 2d 127, 65 O.O. 2d 310, 304 N.E. 2d 382, paragraph one of the syllabus.

In order for a writ of prohibition to issue, the relator must establish that the court, official or tribunal against whom it is sought must be about to exercise judicial or quasi-judicial power; the exercise of power must amount to an unauthorized usurpation of judicial power; and refusal of the writ would result in an injury for which there is no adequate remedy. *State, ex rel. Dayton Power & Light Co.*, v. *Kistler* (1979), 57 Ohio St. 2d 21, 11 O.O. 3d 108, 385 N.E. 2d 1076.

Prohibition tests and determines "solely and only" the subject matter jurisdiction of the inferior tribunal. *State, ex rel. Staton*, v. *Common Pleas Court* (1965), 5 Ohio St. 2d 17, 21, 34 O.O. 2d 10, 13, 213 N.E. 2d 164, 167. Where the tribunal has such jurisdiction, prohibition is not available to prevent or correct an erroneous decision. *State, ex rel. Winnefeld*, v. *Common Pleas Court* (1953), 159 Ohio St. 225, 50 O.O. 263, 112 N.E. 2d 27. It is also not a remedy for an abuse of discretion. *Staton, supra.* As stated in *Kelley*

v. *State, ex rel. Gellner* (1916), 94 Ohio St. 331, 341, 114 N.E. 255, 258:

"In all cases where an inferior court has jurisdiction of the matter in controversy and keeps within the limits prescribed by law for its operation, the superior court should refuse to interfere by prohibition, for it should not consider whether the court below erred in the exercise of its powers, since it has nothing to do with the correctness of the rulings of the inferior court but only with its exercise of jurisdiction."

In the present cases, R.C. 4123.56 and 4123.58 clearly give the commission subject matter jurisdiction over total disability determinations. Since the requisite lack of jurisdiction is not present here, a writ of prohibition is inappropriate.

We do, however, find mandamus to properly issue. This writ will not lie where commission determinations are supported by "some evidence." *State, ex rel. Burley,* v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936. Here, there was not "some evidence" that would support the commission's finding that temporary total disability benefits were properly payable. The present medical evidence, as to each claimant, uniformly indicated that his condition had become permanent. The commission thus abused its discretion and mandamus will lie.

Eaton has supplemented its petitions with a request that it be reimbursed from either the claimant or the State Surplus Fund for all temporary total compensation paid subsequent to the determination that the claimant's condition was permanent. We deny recovery from either source.

As to recoupment from the claimant, in *State, ex rel. Martin,* v. *Connor* (1984), 9 Ohio St. 3d 213, 9 OBR 523, 459 N.E. 2d 889, we defined the key

consideration as being the determination of the recipient's entitlement at the time payments were made. Where the recipient had an enforceable right to compensation at the time it was awarded, there is no right to recoupment. See, also, *Indus. Comm.* v. *Dell* (1922), 104 Ohio St. 389, 135 N.E. 669. The claimants in the present cases, at the time compensation was ordered, had an enforceable right to its receipt pursuant to R.C. 4123.515. That statute reads in part:

"* * * [I]f the decision of the district hearing officer is appealed by the employer or the administrator, the bureau shall withhold compensation and benefits during the course of the appeal to the regional board of review, but where the regional board rules in favor of the claimant, compensation and benefits shall be paid by the bureau or by the self-insuring employer whether or not further appeal is taken. If the claim is subsequently denied, payment shall be charged to the surplus fund created under division (B) of section 4123.34 of the Revised Code, and if the employer is a state risk such amount shall not be charged to the employer's experience and if the employer is a self-insurer such amount shall be paid to the self-insurer from said surplus fund."

This section provides that once compensation has been ordered at an administrative hearing level higher than that of district hearing officer, a self-insured employer must pay same. Thus, upon receipt of such an order, a claimant is entitled to those funds. Such is the case here, where Eaton was ordered to pay compensation by either staff hearing officers or a regional board. Thus, regardless of its disagreement here, Eaton was required to pay compensation and claimants were entitled to its receipt.

Similarly, as to reimbursement

from the Surplus Fund the provision in R.C. 4123.515 providing therefor is prefaced with the words *"[i]f the claim is subsequently denied."* (Emphasis added.) This suggests that Surplus Fund reimbursement is limited to those situations such as where the entire claim is disallowed subsequent to a payment of compensation. This does not include Surplus Fund reimbursement *every time* compensation is awarded and the award is then subsequently overturned.

In summary, we find the commission policy invalid both substantively and procedurally. Mandamus being the proper vehicle for relief, the critical question is one of "some evidence." In each case, the relied-on medical evidence uniformly indicated a permanent condition. There was thus not "some evidence" supporting the commission's continuance of temporary total compensation. Accordingly, we hold as follows:

In case No. 87-622, both commission motions for summary judgment are denied. Eaton's motion for summary judgment is granted to the following extent: a writ of mandamus is granted ordering the commission to vacate its orders of December 10, 1986 and February 26, 1987, to the extent that they find the claimant eligible for further temporary total compensation despite a finding of the condition's permanency, and to make a determination in accordance with this opinion. Eaton's request for a writ of prohibition and its request for a writ of mandamus to compel compensation recoupment from either the claimant or the Surplus Fund are denied.

In case No. 87-1887, we deny the commission's motion for summary judgment. We grant, in part, Eaton's motion for summary judgment, granting a writ of mandamus ordering the commission to vacate its order of August 10, 1987, to the extent that it finds claimant entitled to further temporary total compensation despite a permanency finding, and to make a determination in accordance with this opinion. We deny Eaton's request for a writ of prohibition and for a writ of mandamus compelling recoupment from either claimant or the Surplus Fund.

As to case Nos. 88-205 and 88-1312, the judgments of the court of appeals are hereby affirmed, but the causes are remanded to the Industrial Commission for further proceedings in accordance with this opinion.

> *Writ allowed in part and denied in part in case Nos. 87-622 and 87-1887.*
>
> *Judgments affirmed in case Nos. 88-205 and 88-1312.*

MOYER, C.J., LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur separately.

DOUGLAS, J., concurring. Because I believe the majority opinion is somewhat confusing and, in part, wrong, I write separately.

Section 35, Article II of the Ohio Constitution provides, in part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom."

## I

Pursuant to this authority, the General Assembly has enacted legislation which provides a comprehensive scheme to carry out this constitutional authorization. In promulgating R.C. Chapters 4121 and 4123, the legislature has provided that injured workers are entitled to some compensation during the period of their incapacitation arising out of a work-related injury or disease. Since the compensation provided is in lieu of wages, it must be presumed that the intent of the General Assembly was to provide a system whereby workers would *timely* receive compensation to which they are clearly entitled. While today's majority decision seems to achieve such a result, to be sure of that fact some clarification is in order.

In each of the cases before us, the claimant's work-related injuries have administratively been found to be, to some degree, permanent in nature. Thus, each claimant has suffered an injury arising out of the course of his employment and has been awarded temporary total compensation. There is no question raised by any of the employers in these consolidated cases that each of the claimants involved has suffered a work-related injury; that each claimant has the right to participate, to some extent, in the fund; and that the fund was created for the express purpose of providing compensation to persons who are injured while in the scope of, and during the course of, employment.

The cases at bar arise out of a policy initiated and adopted by the Industrial Commission to resolve problems resulting from determinations concerning payment of temporary total and permanent total compensation to claimants. Because R.C. 4123.56, dealing with payments for *temporary* total disability, and R.C. 4123.58, addressing the matter of payments for *permanent* total disability, are statutes which are something less than models of completeness and clarity, it has been necessary for the commission to deal with issues presented under these sections on a case-by-case basis. In order to facilitate these decisions, the commission has promulgated rules, guidelines and informal understandings and procedures. It is one such commission guideline and procedure that today's majority negates, thereby bringing about, unless corrective action is taken, unfair consequences.

These cases, and many more like them, arise as follows. An employee is injured during the course of employment. The employee applies for benefits pursuant to R.C. 4123.54. The claim is allowed and the employee is "awarded" benefits. If it is found that the employee is *temporarily and totally* disabled, compensation is determined pursuant to R.C. 4123.56.

At some subsequent time, and that time may be reached early,[1] as well as later, during the pendency of the claim, *either* the employer or the employee may move for a determination of whether the employee's condition has become permanent. At this point, operating under a commission policy which was formalized on October 21, 1987 in a memorandum to all hearing officers, a hearing officer[2]

---

[1] No longer is there an automatic period of two hundred weeks for temporary total disability benefits to be paid. *State, ex rel. Bryant,* v. *Pinkerton's, Inc.* (1986), 24 Ohio St. 3d 79, 24 OBR 226, 493 N.E. 2d 544;

*Vulcan Materials Co.* v. *Indus. Comm.* (1986), 25 Ohio St. 3d 31, 25 OBR 26, 494 N.E. 2d 1125.

[2] Only the Industrial Commission, or its staff hearing officers, has the authority to

makes a determination as to the employee's *current* physical condition. If the hearing officer believes that the claimant-employee is removed from *all* sustained remunerative employment due to the allowed injuries in the claim, then the hearing officer is permitted (and advised) to order a continuation of temporary total compensation to be paid during the period of time it takes to process an application for permanent total disability.

At this juncture of our discussion, two points need to be given special attention. First, it needs to be noted that the processing of a permanent total disability application through the commission level takes at least twelve months, and in some cases even longer. Second, it needs to be emphasized that the order of the hearing officer continuing temporary total compensation occurs only if the hearing officer finds that the claimant's temporary disability has become permanent *and* that the claimant is permanently unable to engage in any sustained remunerative employment and that it is *probable* that the commission will find that the claimant is permanently and totally disabled. Only then is the hearing officer authorized to continue temporary total compensation during the pendency of the permanent total disability application.

An example, for clarification, is in order. A construction worker, working from a scaffold, falls from the scaffold and is paralyzed. Obviously, the worker is, at that time, at least temporarily and totally disabled. No one would disagree that the filing for disability would be allowed and the worker, pursuant to the legislature's intent in creating the State Insurance Fund, is entitled to participate in the fund. Within some period of time,[3] either the worker or his employer contends that the injury is permanent in nature and the worker will never again be able to return to work. Thus, it is contended, the employee is permanently and totally disabled and will never again be able to engage in sustained remunerative employment.

Assume further that the employee's doctor, the employer's doctor and a doctor appointed by the commission all agree on this diagnosis. Upon this medical evidence, the district hearing officer finds that the claimant's condition is such that the injury is permanent and total in nature and that the employee, due to the allowed injuries in the claim, is removed from all sustained remunerative employment. Pursuant to the commission's guideline instruction to its hearing officers, codified in the commission's memorandum of October 21, 1987, the hearing officer finds that it is probable that the commission will eventually determine that the worker is permanently and totally disabled and, therefore, pursuant to the guideline, the hearing officer continues the worker's total temporary compensation.

Of course, all such cases, including several of the cases now before us, are not as clear as the hypothetical. Therein lies the problem. If a claimant's condition is permanent—but only partial—then employers contend, with justification, that the condition is no longer temporary and thus compensation designed for temporary total disability (R.C. 4123.56) cannot and should not be continued. When the evidence is conflicting (as it is in all the cases before us), the hearing officer

---

determine questions of permanent total disability. There is no statutory authority for district hearing officers to adjudicate

pending applications for permanent total disability.

[3] See fn. 1.

must determine if the claimant is able to engage in any sustained remunerative employment. If he (she) is, then temporary total compensation is terminated. If not, then the hearing officer is authorized (pursuant to the commission's written guideline directive) to continue temporary total compensation pending a determination of the commission on the question of whether the claimant's condition is permanent and, if so, to what extent—partial or total.

It is this humanitarian policy that is under scrutiny in these cases. The employers contend that even if the condition of the claimant is one of permanent and *total* disability, then the employee must be cut off from receiving *any* compensation while an application is pending for a commission determination on the question of permanency and extent. Thus, an employee who is admittedly injured during the course of employment, whose condition is admittedly permanent and total in nature and for whose benefit the fund has been created, would be summarily cut off from benefits during the time of greatest need. Obviously, house mortgage payments and the need to provide food for the worker's family do not stop!

On what basis does the majority opinion negate the commission's solution to such problems? The majority finds the policy "* * * to be both substantively and procedurally invalid." Let's review the majority's "authorities" for these sweeping assertions.

## II

Is the commission's policy substantively invalid? First, the majority refers us to R.C. 4123.56. After citing the statute, the majority then fails to even discuss the wording of the statute, except as it was interpreted in *State, ex rel. Ramirez,* v. *Indus.*

*Comm.* (1982), 69 Ohio St. 2d 630, 23 O.O. 3d 518, 433 N.E. 2d 586.

The version of R.C. 4123.56, in effect until August 22, 1986, provided that total temporary compensation should be discontinued when an employee had returned to work or an employee's treating physician stated in writing that the employee was capable of returning to his former position of employment. Amended R.C. 4123.56, effective August 22, 1986 and not cited by the majority, adds *additional* criteria for not paying temporary total compensation. The amended statute provides that payment shall not be made when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached maximum medical improvement.

Neither the old nor the new version of R.C. 4123.56 provides, in any place, for the termination of temporary total compensation when the district hearing officer finds permanency. Had the General Assembly chosen to so provide, it could easily have done so when the statute was recently amended. The legislature did not do so and *Ramirez* provides no help, as that case only decided the difference between *temporary total* and *temporary partial* disability. The issue before us is whether a claimant should continue to receive *temporary total* benefits after a *permanent total* disability application has been filed.

Accordingly, *Ramirez* is not on point nor are the two *unreported* courts of appeals' decisions cited by the majority as authority (but, see, Rule 2[G][2] of the Supreme Court Rules for the Reporting of Opinions): *State, ex rel. Lynn,* v. *Indus. Comm.* (July 15, 1986), Franklin App. No. 85AP-351, and *State, ex rel. Dresser Industries,* v. *Indus. Comm.* (Aug. 21, 1986), Franklin App. No. 85AP-212, on

point. The issue in *Lynn* was whether the claimant was permanently or temporarily disabled. The court concluded that since there was "some evidence" to support the commission's finding that the claimant was permanently disabled, the commission did not abuse its discretion when it denied the claimant temporary total disability. Likewise, in *Dresser,* the issue was different from that which we are called upon to decide today. *Dresser* involved the two-hundred-week-cutoff question and held that after two hundred weeks, the claimant was not entitled to temporary total compensation because there was some medical evidence that the disability had become permanent.

Without any statute or case law to support its unfounded finding that the commission's policy is substantively invalid, the majority simply announces that the commission's policy "* * * attempts to enlarge the class of claimants currently eligible for temporary total compensation. * * *"

Recognizing the inherent weakness in the argument, the majority opinion moves to perhaps its most troubling assertion. In citing *State, ex rel. Ashcraft,* v. *Indus. Comm.* (1984), 15 Ohio St. 3d 126, 15 OBR 276, 472 N.E. 2d 1077, the majority opinion seems to equate the claimants' position herein with that of the class of claimants referred to in *Ashcraft.* I simply do not agree with the use of that case for this purpose.

The commission's policy *is not* substantively invalid.

### III

The majority next attacks the commission's policy on the basis that the policy "* * * was not promulgated in accordance with Ohio's Revised Code and Administrative Code. * * *" Thus, the question becomes whether the policy established by the commission is procedurally invalid.

The majority's argument is that R.C. 4121.30(A) requires that all *rules* of operating procedure must be adopted pursuant to R.C. Chapter 119. Further, the majority argues, R.C. 4121.31(A)(2) requires the commission to adopt rules that govern principal operating procedures and procedures for decision-making. The majority then concludes that "* * * the policy in question was thus subject to the rule-adoption requirements of R.C. 4121.31."

If the commission's policy was in fact a *rule* and if there were no other statutory sections applicable, then the majority decision might withstand scrutiny. Such is not the case, however.

The majority opinion overlooks other parts of the legislative scheme established to deal with the very problem before us. Obviously, not *every* detail of *every* procedure of every administrative agency can be fully spelled out in "rules." Recognizing this, the General Assembly enacted R.C. 4121.32(A). This section provides for *supplementation* of rules by an operating manual "* * * setting forth the procedural steps *in detail* for performing each of the assigned tasks of each section of the bureau and commission. * * *" (Emphasis added.)

Further, the first part of R.C. 4121.32(C) provides that:

"Under the overall policy direction of the commission, the bureau and commission each shall develop, adopt, and use a policy manual setting forth the *guidelines* and bases for decision-making for any decision which is the responsibility of the bureau, *district hearing officers,* regional boards of review, staff hearing officers, * * * for deciding at least the following specific matters:

"* *.*

"(12) Determining percentage of permanent partial disability, tem-

porary partial disability, *temporary total* disability * * * and *permanent total* disability." (Emphasis added.)

Finally, it should be noted that the commission did promulgate a rule dealing with temporary total compensation. Ohio Adm. Code 4121-3-32 is the rule dealing with temporary total compensation. The rule provides for when there should be a termination of temporary total. Like its statutory counterpart, R.C. 4123.56, the rule does *not* provide for termination on the basis of permanency.

When the *entire* statutory and rule formula is considered, including R.C. 4121.32(A), 4121.32(C)(12) and Ohio Adm. Code 4121-3-32, it becomes clear that the commission's policy is not procedurally invalid.

### IV

Turning now to the question of reimbursement of the funds paid by the employers pursuant to the commission's orders to continue temporary total compensation, one can glean that we are something less than sure-footed with our decision. In case Nos. 87-622 and 87-1887, the employer, Eaton Corporation, seeks to be reimbursed for all temporary total compensation paid subsequent to the determination that the claimant's condition was permanent. Eaton seeks recovery from either the claimant or the State Surplus Fund. The majority opinion denies any reimbursement. I also disagree with this conclusion of the majority.

In each of the cases at bar, an employer has paid compensation pursuant to orders of the commission that we now say must be vacated because the policy under which the orders were rendered exceeded the commission's authority. Thus, the orders, if one is to accept the language of the opinion, are not merely voidable—they are void!

To support its position that Eaton (and thus any of the employers) cannot recoup from the claimant, the majority cites *State, ex rel. Martin,* v. *Connor* (1984), 9 Ohio St. 3d 213, 9 OBR 523, 459 N.E. 2d 889. The majority tells us that "[t]he claimants in the present cases, at the time compensation was ordered, had an enforceable right to its receipt pursuant to R.C. 4123.515." Therefore, says the majority, since the recipient had an enforceable right to the compensation at the time it was ordered, there is no right to recoupment. What the majority fails to recognize is how there was *any* right to benefits when the commission's policy is now subsequently declared void. The majority solves this problem by simply saying that "[t]he fact that the policy upon which the orders were based was subsequently nullified is immaterial." Of course, there is no citation of authority for this statement — one that is contrary to the very basic tenets of law.

Further, the majority denies reimbursement from the Surplus Fund created under R.C. 4123.34(B). For its authority, the majority says that such recovery just does not fit neatly under the reimbursement section, R.C. 4123.515. I do not agree. Where there has been an ultimate finding that an employer has been improperly required to pay all (or any part) of a sum in compensation, then that employer is entitled to reimbursement from the Surplus Fund.

If we really believe in our ultimate holding herein, then we should give Eaton Corporation, the other employers now before us and the many additional employers similarly situated, something more than a hollow victory. The pertinent part of R.C. 4123.515 reads, "* * * [i]f the claim is subsequently denied, payments shall be charged to the surplus fund created under division (B) of section 4123.34 of the Revised Code * * *." Certainly, if

nothing else, the majority decision meets this condition. The payments have been found to be improperly paid under orders that never validly existed.[4]

Accordingly, literally applying the majority decision, the employers herein are entitled to reimbursement from the Surplus Fund, and I would so order.

## V

We should recognize that the vast (overwhelming) majority of employers do not want an employee to be cut off from compensation to which the employee is entitled when that employee has been injured doing the employer's work. Conversely, employers do not want to be "ripped off" by employees who are not making an effort to seek rehabilitation and return to work where such course is indicated. In sum, employers want deserving injured employees to be taken care of, but do not want temporary total benefits to continue when such benefits are neither warranted nor proper. There are several ways to accomplish these goals.

First, we could find the commission's current policy to be reasonable and uphold its actions in these cases. This is not a desirable course of action because the continued payment of temporary total compensation to one who is permanently injured, arguably, results in an indefensible contradiction and would only encourage further litigation.

Second, we could find, in these cases, that the commission's policy was a lawful exercise of its legislatively granted prerogatives and at the same time indicate that the commission's decision to continue temporary total compensation, when there is an indication of permanency, would receive from this court heightened scrutiny when such cases are brought before us. We could further indicate that if we eventually found the commission's determination as to permanent total disability not to be well-taken or if the commission found that the disability was permanent—but not total—then we would order recoupment to the employer of any temporary total compensation that has been, during the interim of the pending permanent total disability application, improperly paid. This is an additional approach.

Third, we could strongly suggest to the commission (and I think this is what we do in today's decision), using the instant cases as our vehicle, that the commission exercise its power pursuant to R.C. 4121.35(A) which provides in part, that "[t]he industrial commission may appoint *staff* hearing officers to consider and decide on behalf of the commission *all* matters over which the commission has jurisdiction.* * *" (Emphasis added.) In doing so, the commission could authorize its *staff* hearing officers to directly consider any application to terminate temporary total compensation when a concurrent application for permanent total disability is pending.[5]

---

[4] I recognize, of course, that it appears that the claims have not been "subsequently denied" as our decision is now to be applied only prospectively. I find this confusing.

[5] In suggesting this approach, I am mindful of the language found in R.C. 4123.56(A), to wit:

"* * * If the employer disputes the at-

tending physician's report, payments may be terminated only upon application and hearing by a *district hearing officer.* * * *" (Emphasis added.)

While admittedly this language is found in R.C. 4123.56, the "temporary disability compensation" section, I construe the plenary language of commission procedural authority in R.C. 4121.35 to be controlling.

Under this procedure, an application to terminate temporary total would be combined for hearing with the application for permanent total. The commission would then render its decision that the claimant is still temporarily totally disabled, is temporarily partially disabled, is permanently and totally disabled, or is permanently and partially disabled. Such a procedure would prevent a lapse of benefits in the case of a worker who is unable to work at any sustained remunerative employment and would also prevent an employer from having to pay temporary total compensation needlessly because a claimant's condition has reached some degree—total or partial—of permanency. This is the approach I would most prefer—and it *is* within our power in these cases to so decide and order.[6]

## VI

Accordingly, in case Nos. 87-622 and 87-1887, I would deny relator's petitions and complaints seeking mandamus and prohibition. In denying relator's requested relief, I would, however, remand both cases to the commission with instructions to make a final determination (if determinations have not yet been made) as to claimants' applications for permanent total disability. If the commission determines that either or both claimants continue to be *temporarily and totally* disabled, then the commission should enter its order accordingly and the relator could then, if it chooses, challenge the validity of that order on the basis that there is no

evidence to support the commission's decision.

If the commission finds that either or both claimants are *permanently and totally* disabled, then the commission should enter its order accordingly. Such order could then be challenged by relator on the basis that there is *no* evidence to support the commission's decision.

If the commission determines that either of the claimants is temporarily *and partially* (an unlikely event, of course) or *permanently and partially* disabled and such condition has existed since the date of the filing of the application to terminate temporary total or the filing date of the application for permanent total, then the commission should determine the amounts of money relator has paid and relator should be reimbursed said sums from the Surplus Fund pursuant to R.C. 4123.515.

Such a procedure would encourage the commission (staff hearing officers) to promptly hold combined hearings and expeditiously render decisions. The procedure would also avoid much now-existing overlap, avoid the hardship of claimants from being cut off from benefits when there is a clear entitlement thereto, provide reimbursement for employers who have been required to pay temporary total benefits for an unwarranted period of time, and generally speed up the entire claim process. Of course, any reimbursement procedure could be avoided by the commission mandating, by guideline, that a combined hearing must be held within a *reasonable* time after either or

---

[6] The majority suggests that the commission also has the authority to accomplish this result by virtue of R.C. 4121.06(A). I do not think that section is applicable. Read literally, the section contemplates specialists in particular fields (consultants) such as engineering, medicine, construction, etc. However, as long as the majority now reaches the result that I believe is appropriate, I take no serious umbrage with the thought.

both an application to terminate temporary total and an application for permanent total have been filed. If no permanent total application is filed by a claimant, then a *district* hearing officer could hear the application to terminate temporary total on the basis that the claimant's condition was now permanent or the claimant had reached maximum medical improvement. If the hearing officer found *any* permanency, then the total temporary benefits would be terminated.

In case Nos. 88-205 and 88-1312, I would reverse the judgments of the court of appeals and deny the requested writs. I would, however, remand the cases to the commission with the same instructions as indicated in the foregoing discussion concerning case Nos. 87-622 and 87-1887.

It is somewhat comforting to know that the majority decision now reaches some of these goals. In making our order prospective, we should make it clear that it is our intention that no deserving person is terminated from benefits during the course of the administrative reorganization that, by necessity and order, now must take place.

SWEENEY, J., concurs in the foregoing concurring opinion.