THE STATE, EX REL. MCGINNIS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; ROADWAY EXPRESS, INC., APPELLANT.

[Cite as State, ex rel. McGinnis, *v.* Indus. Comm. (1991), 58 Ohio St. 3d 81.]

(No. 90-26—Submitted October 23, 1990—Decided March 20, 1991.)

*Gallon, Kalniz & Iorio Co., L.P.A.,* and *Theodore A. Bowman,* for appellee.

*Eastman & Smith, John T. Landwehr* and *Thomas J. Gibney,* for appellant.

*Per Curiam.* Two issues are presented: (1) Did claimant have an adequate remedy at law via an R.C. 4123.519 appeal? and, if not, (2) May appellant recoup temporary total compensation paid from September 30, 1982 by deducting it from claimant's future compensation? We answer "no" to both questions.

R.C. 4123.519 provided, at the time relevant herein, in part:

"The claimant or the employer may appeal a decision of the industrial commission * * *, *other than a decision as to the extent of disability*, to the court of common pleas * * *." (Emphasis added.)

It also directed the claimant to:

"* * * [W]ithin thirty days after the filing of the notice of appeal, file a petition containing a statement of facts * * * showing a cause of action to participate or to continue to participate in the fund * * *."

Appellant maintains that the relevant issue here does not involve extent of disability and is therefore appealable. We disagree.

In *Miraglia* v. *B.F. Goodrich Co.* (1980), 61 Ohio St. 2d 128, 15 O.O. 3d 163, 399 N.E. 2d 1234, we found that mandamus was the proper remedy for a self-insured employer seeking to offset payment of total disability compensation against a claimant's disability pension. We reasoned:

" '* * * For the purpose of appeal under R.C. 4123.519, the question of allowance or rejection of these various claims is, by the terms of R.C. 4123.519, appealable * * *. Once finally allowed, however, the question involving the computation of monetary payment therefor is one as to "extent of disability." * * *' " *Id.* at 130-131, 15 O.O. 3d at 164, 399 N.E. 2d at 1236, citing *Zavatsky* v. *Stringer* (1978), 56 Ohio St. 2d 386, 403, 10 O.O. 3d 503, 513, 384 N.E. 2d 693, 703.

We thus concluded:

"In the instant cause, the question concerns the extent of participation, since Miraglia's right to participate in the Workers' Compensation Fund has already been determined. Mandamus is the appropriate procedure to determine whether Goodrich can offset the benefits given to Miraglia under R.C. 4123.56. Accordingly, the question as presented does not fall within the purview of R.C. 4123.519, and, therefore, it is not appealable to the Court of Common Pleas." *Miraglia, supra,* at 131, 15 O.O. 3d at 165, 399 N.E. 2d at 1237.

Our application of *Miraglia* herein nullifies appellant's reliance on *State, ex rel. O.M. Scott & Sons Co.,* v. *Indus. Comm.* (1986), 28 Ohio St. 3d 341, 28 OBR 406, 503 N.E. 2d 1032; *Seabloom Roofing & Sheet Metal Co.* v. *Mayfield* (1988), 35 Ohio St. 3d 108, 519 N.E. 2d 358; *State, ex rel. Wean United, Inc.,* v. *Indus. Comm.* (1988), 37 Ohio St. 3d 203, 524 N.E. 2d 896; and *State, ex rel. Y&O Coal Co.,* v. *Indus. Comm.* (1988), 40 Ohio St. 3d 165, 532 N.E. 2d 745. Those opinions discussed the remedy question within the context of commission decisions that involved neither extent of disability nor right to participate. Since *Miraglia,* however, indicates that the present order involves extent of disability, *O.M. Scott* and progeny are inapplicable.

We also decline to apply *State, ex rel. Weimer,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 159, 16 O.O. 3d 174, 404 N.E. 2d 149, and *State, ex rel. Consolidation Coal Co.,* v. *Indus. Comm.* (1985), 18 Ohio St. 3d 281, 18 OBR 333, 480 N.E. 2d 807. Both cases addressed the commission's exercise of continuing jurisdiction pursuant to R.C. 4123.52 to modify a prior final order. This situation does not exist here.

Turning to the merits of appellant's recoupment request, appellant relies heavily on *State, ex rel. DeLong,* v. *Indus. Comm.* (1988), 40 Ohio St. 3d 345, 533 N.E. 2d 729. Upon review, we determine that appellant's reliance on *DeLong* is misplaced since that case, too, is distinguishable.

In *DeLong,* an employer appealed a district hearing officer's award of temporary total disability compensation. That appeal, under R.C. 4123.515, stayed the payment of compensation pending a regional board hearing. The self-insured employer, however, mistakenly paid compensation during the pendency of that hearing. After discovering its error, the employer sought to offset the tem-

porary total disability compensation paid against the temporary partial disability compensation that was ultimately awarded over the same period.

Our analysis focused on the " 'determination of the recipient's entitlement' * * * *at the time payments were made.*" (Citation omitted.) (Emphasis *sic.*) *Id.* at 347, 533 N.E. 2d at 730. In ultimately upholding the employer's right to recovery, we reasoned that because of R.C. 4123.515's stay on payment of compensation pending the regional board order, the claimant could not have had a good faith belief that he was entitled to the funds. See, also, *Weimer, supra.*

In the present case, R.C. 4123.56 provided:

"In the case of an employer who has elected to pay [temporary total] compensation direct, payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer. Payments shall continue pending the determination of the matter, however, payment shall not be made for such period when any employee has returned to work or when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment."

Thus, so long as claimant's physician did not release him to return to his former position, appellant was statutorily required to pay temporary total disability compensation until a commission hearing officer held otherwise. This eventually occurred on January 18, 1984. In view of appellant's duty, claimant was entitled to the funds. *DeLong* and *Weimer* are thus distinguishable.

Moreover, the subsequent discounting of Dr. Glorioso's reports by the commission, upon which reports temporary total disability compensation over the relevant period was based, does not transform R.C. 4123.56's mandated payments into a recoupable overpayment. In *State, ex rel. Eaton Corp.,* v. *Lancaster* (1988), 40 Ohio St. 3d 404, 534 N.E. 2d 46, the commission continued temporary total disability compensation despite a finding that the claimant's condition had become permanent. We agreed with the self-insured employer that, in retrospect, continued temporary total disability compensation was not supported by "some evidence," but declined to permit recovery from the claimant.

We reasoned that under R.C. 4123.515, once compensation was ordered by the regional board, the employer was required to continue payment, regardless of appeal, until the award was terminated by an administrative order. We concluded:

"This section [R.C. 4123.515] provides that once compensation has been awarded at an administrative hearing level higher than that of district hearing officer, a self-insured employer must pay same. Thus, upon receipt of such an order, the claimant is entitled to those funds. Such is the case here, where Eaton was ordered to pay compensation by either staff hearing officers or a regional board. Thus, regardless of the disagreement here, Eaton was required to pay compensation and claimants were entitled to its receipt." *Id.* at 410, 534 N.E. 2d at 53.

In light of R.C. 4123.56 and the reasoning set forth in *Eaton,* the court of appeals correctly determined the claimant's entitlement to the temporary total disability compensation and consequent absence of overpayment. We thus find that appellant's re-

quest for recoupment from the claimant-appellee via an offset against future compensation is improper.

Accordingly, the appellate court's judgment is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., concurs in judgment only.

HOLMES, J., dissents.

HOLMES, J., dissenting. I concur in the majority's opinion which determines that the claimant, Michael R. McGinnis, does not have an adequate remedy at law. See *Miraglia* v. *B.F. Goodrich Co.* (1980), 61 Ohio St. 2d 128, 15 O.O. 3d 163, 399 N.E. 2d 1234. However, I must dissent from this court's denial of appellant's request for recoupment of funds which were *overpaid* to the benefit of the claimant from September 30, 1982 to February 7, 1984.

The salient facts in this case are that the claimant was receiving compensation based on reports from his doctor, who certified claimant's inability to return to his former position of employment. Subsequently, upon a motion by appellant, a commission district hearing officer determined that claimant's doctor had considered nonallowed conditions and, for that reason and others, the hearing officer terminated temporary total compensation as of September 30, 1982. The district hearing officer's order included the following findings and determinations:

"* * * An independent orthopedic specialist, F. B. Hawkins, M.D., indicates 'The changes present in the thoracic spine and cervical spine, in my opinion, are *not compensatory* but are simply pre-existing changes in the spine. * * *' [Emphasis *sic.*]

"* * *

"GRANT employer's motion filed 2-22-83 requesting termination of temporary total disability compensation effective 9-30-82 as Dr. J. B. Webster indicates that as of the date of his exam on 9-30-82 claimant 'is eligible to participate in unrestricted employment.' * * *"

Thus, as of September 30, 1982, employee was fully able to return to employment and his former employer was entitled to discontinue temporary total disability compensation. Consequently, any funds disbursed by or on behalf of the employer to the claimant beyond September 30, 1982 were purely an overpayment. The district hearing officer's termination order was administratively affirmed.[1]

Next, employer sought and received an offset of the overpayment against any future awards granted to the claimant by the Industrial Commission. The refusal of both the court of appeals and this court to allow employer's recoupment of funds paid

_____

[1] In his order, the district hearing officer rendered a specific factual finding with respect to the quality of the medical report of claimant's attending physician, Dr. Glorioso, by stating:

"The attending physician's estimation of temporary total disability must be discounted at the present time, as he considers several conditions which have *not* been formally recognized in this claim. This period of disability may be subsequently readjusted if claimant secures the formal additional allowance of said conditions in his claim." (Emphasis *sic.*)

in excess of those properly determined to be due to claimant is contrary to law and defies logic.[2]

The majority relies on *State, ex rel. Eaton Corp.*, v. *Lancaster* (1988), 40 Ohio St. 3d 404, 534 N.E. 2d 46, for the proposition that an employer can never recoup funds paid pursuant to R.C. 4123.56 even where such funds were paid erroneously. The majority's misguided analysis of *Eaton Corp.* is premised on the assumption that it is factually similar to the case at bar. I disagree. In *Eaton Corp.*, continued payment of temporary total disability compensation was ordered despite a finding that the claimants' condition had become permanent. This court permitted the claimants to retain the overpayment because the Industrial Commission allowed continued compensation during the pendency of the action and "once compensation * * * [was] ordered at an administrative hearing level higher than that of district hearing officer, a self-insured employer" was required to dispense the funds. *Id.* at 410, 534 N.E. 2d at 53. Therefore, this court, in *Eaton Corp.*, was *not* confronted with the situation where eligibility for temporary total disability was retroactively invalidated due to an evaluation error made by the claimant's doctor.

In *State, ex rel. Ramirez*, v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 632, 23 O.O. 3d 518, 519, 433 N.E. 2d 586, 588, this court interpreted the propriety of discontinuing temporary total disability payments pursuant to R.C. 4123.56 and held:

" 'An employee is entitled to be paid temporary total disability when injured and unable to work until one of the following three things occur[s]: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to his former position of employment, or (3) the temporary disability has become permanent.' " In logically interpreting the criteria set forth in *Ramirez*, it is evident that where a commission finds that a treating physician has erroneously permitted a claimant to remain ineligible to return to work and such claimant is deemed "eligible to participate in unrestricted employment," the claimant's rights to compensation are cut off as of the date the claimant is determined to be able to return to employment.

In a case analogous to the one at bar, this court permitted recoupment of payments based on a mistake of fact. *State, ex rel. DeLong*, v. *Indus. Comm.* (1988), 40 Ohio St. 3d 345, 533 N.E. 2d 729. In *DeLong*, an employer

---

[2] The majority, in its haste to allow the claimant to retain his compensation, neglects the fact that the district hearing officer terminated benefits on January 18, 1984; therefore, under the majority's own analysis the employer was entitled to recoup its overpayments from January 18, 1984 through February 7, 1984. The majority opinion reads:

"* * * [A]ppellant was statutorily required to pay temporary total disability compensation until a commission hearing officer held otherwise. This eventually occurred on January 18, 1984. * * *"

Thus, the employer mistakenly compensated the claimant from January 18, 1984 to February 7, 1984 and, therefore, the employer is entitled to/recoup at least these funds under our analysis in *State, ex rel. Martin*, v. *Connor* (1984), 9 Ohio St. 3d 213, 9 OBR 523, 459 N.E. 2d 889; *State, ex rel. DeLong*, v. *Indus. Comm.* (1988), 40 Ohio St. 3d 345, 533 N.E. 2d 729; and *State, ex rel. Weimer*, v. *Indus. Comm.* (1980), 62 Ohio St. 2d 159, 16 O.O. 3d 174, 404 N.E. 2d 149.

mistakenly paid compensation to a claimant during the pendency of an appeal to the regional board of review. After discovering its error, the employer attempted to offset the temporary total disability compensation paid against the temporary partial disability compensation that was ultimately awarded to the claimant over the same period on another claim. As the majority in this case notes, our analysis in *DeLong* focused on the " 'determination of the recipient's entitlement' * * * *at the time payments were made.*" (Emphasis *sic.*) *Id.* at 347, 533 N.E. 2d at 730. The majority suggests that the allowability of recoupment in *DeLong* was based on that lack of good faith on the part of the claimant regarding his entitlement to the funds. Assuming *arguendo* that the majority's interpretation of *DeLong* is correct, how can a claimant have a good faith belief that he is entitled to benefits where his treating physician uses improper criteria to evaluate his claim? The physician's erroneous conclusions must be transferred to the claimant, and in so doing, an expectation arises that the claimant will inquire as to the permissibility of his claim under the criteria established by the General Assembly and Industrial Commission. A good faith belief does not excuse ignorance on the part of the claimant or his representative (*i.e.,* treating physician).

Accordingly, for the foregoing reasons I dissent, since I would reverse the judgment of the court of appeals.