[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 241.]

THE STATE EX REL. CONSOLIDATED FREIGHTWAYS, APPELLANT, *v*. ENGERER ET AL., APPELLEES.

[Cite as *State ex rel. Consol. Freightways v. Engerer*, 1996-Ohio-136.]

*Workers' compensation—Award of wage-loss compensation—Industrial Commission's failure to examine critical issues dictates a return to the commission for further consideration.*

(No. 94-951—Submitted November 7, 1995—Decided January 10, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 92AP-1492.

_____

{¶ 1} Appellee-claimant, Michael Robin Engerer, was injured in the course of and arising from his employment with appellant Consolidated Freightways. In March 1989, claimant moved for wage-loss compensation, pursuant to R.C. 4123.56, alleging that he could not return to his former position of employment and could not find work within his physical capacities. He accompanied his motion with four doctor's reports, all of which restricted claimant's lifting and bending activities. On June 13, 1989, a district hearing officer for appellee Industrial Commission of Ohio held:

"[P]ursuant to Industrial Commission Rule 4123-3-32-C-2 [*sic*, 4121], the District Hearing Officer hereby makes a finding that claimant is capable of work for which the employer has no available jobs.

"Claimant is instructed to register with the Ohio Bureau of Employment Services within 14 days of the receipt of this order, pursuant to Industrial Commission Rule 4123-3-32-C [*sic*].

"The District Hearing Officer finds that the claimant has sustained a wage loss under Division B of O.R.C. 4123.56 beginning 1-12-89 and continuing upon

the submission of wage statements and until terminated by the earlier of af [*sic*] formal hearing or 200 weeks."

{¶ 2} Consolidated appealed. In the evidence before the regional board was a September 15, 1989 C94A wage statement that said simply, "No earnings 1/12/89 to present." However, an April 11, 1989 report from Dr. Edwin H. Season noted that claimant stated that he was "presently working part-time as a self-employed pilot."

{¶ 3} On January 4, 1990, a regional board modified the district hearing officer's order as follows:

"The Board finds wage loss on set [*sic*] date is 6/13/89. Further computation of wage loss is to be [paid] pursuant to R.C. 4123.56 (B). The Board further finds that claimant should register with state of Michigan if he becomes a resident of Michigan. Further claimant is to file monthly wage statement affidavits setting forth the following: (1) wages earned, if any, during the month (2) employer, if any, who paid wages [and] (3) if unemployed, set forth who the prospective employers were that were contacted by claimant."

{¶ 4} Claimant appealed. During the pendency of the proceeding, claimant submitted a C94A, dated March 7, 1990, that stated that he had had no employment or earnings from January 12, 1989 to date, and listed four prospective employers.

{¶ 5} Consolidated tried to verify claimant's employment contacts by writing to the alleged prospective employers. Three indicated that they were "not able to confirm that Robin Engerer has applied for employment *** since March, 1989."

{¶ 6} Consolidated then moved the commission "(1) [t]o declare that the claimant perjured himself by filing his wage loss statement on March 7, 1990, (2) to determine that the claimant's wage loss statement of May 7, 1990 fails to show compliance with the statute and with the Regional Board's Order of January 4, 1990 and (3) to afford the employer all of the relief to which it may be entitled."

{¶ 7} The May 7, 1990 C94A submitted by claimant again stated that he had had no employment or earnings and listed three employers and the "Michigan Unemployment Division."

{¶ 8} Claimant's appeal was heard by staff hearing officers on June 22, 1990. The order based on that hearing read:

"Wage loss compensation is to be paid from 1-12-89 and to continue upon submission to the employer of wage affidavits as specified in the Regional Board order FOR A PERIOD OF TWO HUNDRED WEEKS OR EARLIER IF TERMINATED BY A FORMAL ORDER.

"It is specifically noted that the employer's representative specified at the D.H.O. hearing that the employer is unable to provide claimant with employment consistent with his physical limitations, thereby establishing claimant's eligibility for compensation under O.R.C. 4123.56. This wage loss was proximately caused by the medical impairment. This [illegible] impairment was established by Dr. Season and Dr. Kessler."

{¶ 9} Consolidated moved for reconsideration. That motion was never adjudicated.

{¶ 10} The parties continued to collect evidence. Consolidated obtained an affidavit of Harry G. Ferares, private investigator, who averred that claimant had recently held himself out to Ferares as being a commercial pilot and photographer.

{¶ 11} Claimant meanwhile continued to submit C94As listing alleged employment contacts made in Michigan, where claimant then lived. On April 25, 1991, a district hearing officer ruled on Consolidated's motion as follows:

"(1) R.C. 4123.56(B) wage loss compensation is denied for the period of 5-8-90 through 4-25-91 date of this hearing. There is insufficient evidence to establish that claimant has complied with the directions provided in the SHO order dated 6-22-90 and the Regional Board Order of 1-4-90. The affidavit dated 7-16-90 of Mr. Ferares and employer's counsel's letter dated 7-19-90 along with the

attached transcript and exhibits of the 6-22-90 SHO hearing are persuasive to establish that claimant has not adequately sought employment consistent with his medical limitations for the above denied period. This finding is further supported by the Roadway Express response letter dated 4-20-90; the Consolidated Freightways response letter dated 3-17-90, and the Yellow Freight response letter dated 3-15-90. All of the above taken together raise doubt as to the credibility of claimant's sworn C-94A and transcript statements as to both his actual wage earnings as well as his attempts to find work consistent with his capabilities. Further, it indicates the claimant has not established an entitlement to wage loss compensation for the above denied period.

"(2) The self-insured employer may consider wage loss compensation for the period of 4-26-91 onward upon submission of the following proof: Notarized statements by claimant which list actual earnings per week by the claimant, and also list which employer's [*sic*] were specifically contacted by the claimant for employment within the claimant's physical capabilities. Such notarized lists shall include the full name and address of the employer, the date of the contact, the type of employment sought, the name of the contact person at the employer, and shall also include written verification of the contact signed by the contact person at the employer. Further, the claimant shall be required to provide the employer with ongoing competent medical proof as to the claim-related physical restrictions for each three month period from 4-25-91 for so long as wage loss compensation is requested. These requirements are ordered as a result of the credibility concerns noted above.

"(3) There is no jurisdiction for this District Hearing Office to consider payment of wage loss compensation for the period of 1-12-89 through 5-7-90. This issue has been fully addressed by the SHO Order dated 6-22-90 and the self-insured evaluation board notice of finding mailed 11-29-90. The Staff Hearing Officers based the order for wage loss compensation on the reports of Dr.(s) Season and

Kessler and on the named employer's inability to provide claimant with employment consistent with his limitations. Such reasoning would remain unaffected by the arguments raised by the employer in its C-86 Motion filed 5-24-90."

{¶ 12} Consolidated appealed. Among other testimony elicited before the regional board, claimant admitted that none of the employers had jobs consistent with his physical restrictions. The board affirmed the prior order.

{¶ 13} Consolidated again appealed and C94As again continued to arrive. On June 8, 1992, staff hearing officers ruled:

"Staff Hearing Officers find that the issue of wage loss up to and including 6/21/90 was rendered moot by the Staff Hearing Officers order of 6/22/90 and is ordered to be paid to 6/21/90 ***.

"The Staff Hearing Officers find insufficient persuasive evidence that claimant was engaged in a good faith effort to find work within the physical restrictions set forth by Drs. McCloud, Steinman [*sic*] and Kessler from 6/22/90 through 3/1/91. Staff Hearing Officers find that claimant was engaged in a good faith effort to find such work from 3/2/91 through 5/1/92 and award appropriate Wage Loss Compensation. Wage Loss Compensation beyond 5/2/92 is authorized to be continued upon submission of evidence within BWC guideline[s]. This is based on the lists supplied by the claimant indicating the places he has applied for work.

"The Staff Hearing Officers find that the submission of the Wage Loss statement of 3/7/90 and the facts surrounding such, do not constitute a fraud perpetrated upon the Workers' Compensation Fund of Ohio, or upon [the] employer. The cited responses from alleged job contacts only state that they cannot confirm the claimant applied for work, they do not deny he did so. Further, the treasury statement and the certificate for the hobby shop indicate the claimant was not doing other work during the period he is alleging wage loss."

**{¶ 14}** Consolidated filed a complaint for a writ of mandamus in the Court of Appeals for Franklin County. The appellate court vacated wage loss from January 12, 1989 through June 21, 1990. It held that the commission did not adequately address the issue, finding "an absence of evidence upon which the hearing officer could base an order of payment of wage loss compensation from the standpoint of any determination of what efforts, if any, claimant had made to find work within his physical capabilities."

**{¶ 15}** It ordered the commission to determine whether the claimant had made a good faith effort to find work during that period and to issue an amended order on wage-loss eligibility over that period. The court, however, upheld wage-loss payment from March 2, 1991 through May 1, 1992.

**{¶ 16}** The cause is now before this court upon an appeal as of right.

_____

*Porter, Wright, Morris & Arthur*, *Darrell R. Shepard* and *Christopher C. Russell*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee Industrial Commission.

_____

***Per Curiam.***

**{¶ 17}** R.C. 4123.56 (B) reads:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

**{¶ 18}** Ohio Adm. Code 4121-3-32 (D) states:

"In injury claims in which the date of injury *** is on or after August 22, 1986, the payment of compensation [for] wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

{¶ 19} Claimant's wage loss motion is premised on his alleged inability to (1) return to his former position of employment due to the physical restrictions imposed and (2) find other work within those restrictions. Recovery under this theory requires that the claimant actually sought work within his capacities. At issue is the quality of this search for two periods: January 12, 1989 through June 21, 1990; and March 2, 1991 through May 1, 1992.

{¶ 20} The commission did not address the quality of claimant's job search for the period covering January 12, 1989 through June 21, 1990. The original June 22, 1990 staff hearing officers' award was premised *solely* on Consolidated's inability to provide claimant with suitable work. The commission never examined claimant's ability to secure *other* employment, which is the purpose behind wage-loss compensation—to return claimant to some type of remunerative employment, regardless of employer.

{¶ 21} This deficiency was not remedied in later administrative proceedings. The June 8, 1992 staff hearing officers' order declined to address this period, finding that the previous staff hearing officer order had rendered the issue moot. This reasoning is somewhat unclear. The appellate referee suspected—

probably accurately—that the staff hearing officers meant to declare the issue *res judicata*, not moot. In either event, the commission erred.

{¶ 22} The June 22, 1990 award of wage loss from January 12, 1989 through June 21, 1990 is not *res judicata* because the order never became final. Consolidated's motion for reconsideration was never acted upon and remains open. Since claimant's wage-loss entitlement is still an open question, the job search issue cannot be moot.

{¶ 23} The commission also did not address the work search issue from January 12, 1989 through June 21, 1990. It did address the matter over the period from March 2, 1991 to May 1, 1992, affirmatively finding that claimant had sought employment over the latter period. However, the commission's discussion said nothing about the *adequacy* of the work search.

{¶ 24} The commission's failure to examine these critical issues dictates a return to the commission for further consideration. Contrary to Consolidated's representation, *State ex rel. Gay v. Mihm* (1994), 68 Ohio St. 3d 315, 626 N.E. 2d 666, does not compel a contrary result. Our review of the record reveals conflicting evidence, omitted information, and credibility issues. The evidence is not, therefore, so one-sided as to favor relief pursuant to *Gay*. Moreover, given this disposition, it is premature to address Consolidated's allegations of fraud.

{¶ 25} Accordingly, that portion of the judgment of the court of appeals that upheld the payment of wage-loss compensation from March 2, 1991 through May 1, 1992 is reversed. The balance of the judgment is affirmed, and the commission is ordered to give further consideration to the issue of wage-loss eligibility over the disputed periods and to issue an amended order.

*Judgment reversed in part,*
*affirmed in part*
*and limited writ granted.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

WRIGHT, J., dissents.

_____

**DOUGLAS, J, concurring in part and dissenting in part.**

**{¶ 26}** I concur with the majority in its judgment to reverse the court of appeals regarding payment of wage-loss compensation from March 2, 1991 through May 1, 1992. I respectfully dissent from that part of the judgment of the majority which affirms the judgment of the court of appeals in ordering the commission to give further consideration to the issue of wage-loss eligibility over the periods disputed by appellant-employer. I would enter an order reversing the judgment of the court of appeals in its entirety and order the commission to vacate its orders of June 22, 1990 and June 8, 1992. I would further order that claimant had no entitlement to wage-loss compensation for the periods of January 12, 1989 to June 21, 1990 and March 2, 1991 to May 1, 1992.

**{¶ 27}** This case is a good example of why there are continuing calls for workers' compensation "reform." While I would stop just short of finding that claimant committed fraud, clearly the indicia are there. The record is replete with claimant's bad faith. I cannot say it better than a district hearing officer said it in an order of April 25, 1991: "All of the above taken together raise doubt as to the credibility of claimant's sworn C-94A and transcript statements as to both his actual wage earnings as well as his attempts to find work consistent with his capabilities."

**{¶ 28}** While admittedly *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 534 N.E.2d 46, dealt with the issue of temporary total disability, nevertheless I believe that what I said in my concurrence in that case applies as well to questions of wage loss compensation. In *Lancaster,* I said: "We should recognize that the vast (overwhelming) majority of employers do not want an employee to be cut off from compensation to which the employee is entitled when that employee has been injured doing the employer's work. Conversely, employers do not want

to be 'ripped off' by employees who are not making an effort to seek rehabilitation and return to work where such course is indicated. In sum, employers want deserving injured employees to be taken care of, but do not want temporary total benefits to continue when such benefits are neither warranted nor proper." *Id.* at 417, 534 N.E.2d at 58 (Douglas, J., concurring).

{¶ 29} I believe that any fair reading of the record in this case leads to the conclusion that claimant was "ripping off" Consolidated. He was shown to be untruthful in both his oral testimony and in some of the documents he submitted. Accordingly, I believe that the appellant-employer, Consolidated, is entitled to final judgment in its favor, thereby permitting it reimbursement from the surplus fund.

{¶ 30} One last point. Having heard employers and their representatives severely criticize *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, I find it more than just interesting that Consolidated favorably cites *Gay* in its first proposition of law and three more times in its brief. Consolidated says that "[g]iven the record in this case, what purpose could possibly be served by returning this cause to the commission for it to attempt to justify its position? See *Gay*, *supra*, at 323, [626 N.E.2d at 673]." I guess our view of things sometimes depends on whose ox is being gored.

{¶ 31} For the foregoing reasons, I concur in part and dissent in part.

———————————

**W<small>RIGHT</small>, J., dissenting.**

{¶ 32} I part company with the majority for much the same reasons expressed by Justice Douglas in his dissent. I continue to believe that *Gay* should be applied sparingly. However, in this case there was a clear abuse of discretion by the commission. Thus, I respectfully dissent.

———————————