[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 536.]

THE STATE EX REL. BARCLAYS BANK PLC ET AL. *v*. COURT OF COMMON PLEAS OF HAMILTON COUNTY, OHIO ET AL.

[Cite as *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 1996-Ohio-286.]

*Prohibition—Presence of disagreement is insufficient to create an actual controversy if the parties to the action do not have adverse legal interests—Action to enjoin payment under letter of credit must include beneficiary as a party in order to present an actual controversy within court's subject matter jurisdiction.*

1.  The presence of a disagreement, however sharp and acrimonious it may be, is insufficient to create an actual controversy if the parties to the action do not have adverse legal interests.

2.  An action to enjoin payment under a letter of credit or a confirmation of a letter of credit must include the beneficiary as a party in order to present an actual controversy within the common pleas court's subject matter jurisdiction.

(No. 95-274—Submitted October 10, 1995—Decided February 14, 1996.)

IN PROHIBITION.

————————————

{¶ 1} Relator Barclays Bank PLC ("Barclays") is a bank organized under the laws of England and Wales with its headquarters and principal place of business in London, England.  Intervenor-relator is Star Bank.  Respondents are the Court of Common Pleas of Hamilton County, Judge Arthur M. Ney and Judge Robert P. Ruehlman ("respondents").  The intervening parties in this action for a writ of prohibition include intervenors-respondents William A. Thurner, Howard

Thiemann, Verna K. Dohme, executor of the estate of Arthur Dohme, and Durwood G. Rorie, Jr. ("intervenors").[1]

{¶ 2} Barclays seeks a writ of prohibition from this court to enjoin respondents from further exercising judicial power in the underlying suits because respondents do not have subject matter jurisdiction. The underlying suits concern standby letters of credit issued by Star Bank and confirmation letters of credit issued by Barclays in favor of the Society of Lloyd's ("Lloyd's"). To more fully explain the circumstances in the underlying suits a brief explanation of Lloyd's follows.

*Society of Lloyd's*

{¶ 3} Lloyd's is not an insurance company, but rather an insurance marketplace somewhat analogous to the New York Stock Exchange. The Corporation of Lloyd's ("the Corporation") maintains and regulates Lloyd's insurance market. Through the Council of Lloyd's ("Council"), the Corporation promulgates standard form agreements which govern the relationships among the entities involved with the market. The Council acts as trustee of a fund maintained to ensure payment of policyholder losses. The Corporation itself, however, does not underwrite any insurance.

{¶ 4} Individual investor members, called "Names," join together in syndicates to underwrite the insurance risks. Because a Name cannot conduct insurance business directly, each Name enters into an agency agreement with a members' agent who acts on the Name's behalf.

---

1. Originally, six Cincinnati residents (Thurner, Thiemann, Dohme, Rorie, T.W. Tilsley, and V. Snowden Armstrong) who invested as "Names" in the Lloyd's of London insurance market filed three similar complaints in respondents' court and were allowed to intervene in this action. A fourth suit was also filed, but the plaintiff in that suit, Carolyn L. Konold, did not intervene in this original action. All four complaints were voluntarily dismissed. Four of the intervenors then refiled two new cases. This decision addresses the new cases only as the original four cases have been rendered moot by the plaintiffs' voluntary dismissal.

**{¶ 5}** To become a Name, an individual must be sponsored by an existing member and must apply to the Corporation. Applicants must satisfy a means test to demonstrate that they possess sufficient assets to support the risk of possible claims. As a condition for investing in the syndicates, each Name is required to post security in cash or cash equivalent, such as an irrevocable letter of credit, in the amount of thirty percent of the value of the Name's investment. The Council, as beneficiary, requires letters of credit to be payable in England. Under a forum selection clause in the Name's contract with Lloyd's, any dispute between a Name and Lloyd's must be decided in the courts of England.

**{¶ 6}** The security covers any underwriting losses that may occur to the syndicates in which the Name invests. Losses result when claims by insurance policyholders exceed the amount of premiums paid to syndicates by the policyholders. In the event that losses do exceed the premium amounts paid, the Council has the ability to make "cash calls" upon syndicate Names in proportion to the amount of their respective investments. If the cash call is not paid by a Name, the Council then may draw against the security posted by the Name.

*Parties' Relationships*

**{¶ 7}** Barclays, Star Bank and intervenors do not dispute the following facts.

**{¶ 8}** During the 1980s, members' agent R.W. Sturge, Ltd., d.b.a. Falcon Agencies, Ltd. ("Sturge/Falcon"), solicited each intervenor to become a Name in Lloyd's. Each of the intervenors invested in Lloyd's insurance market as a Name for three or more years between 1983 and 1994.[2] As the intervenors' members' agent Sturge/Falcon placed the intervenors in syndicates.

---

2. Each intervenor was a Name for the following years:

| | |
|---|---|
| Rorie | 1988 - 1994 |
| Thurner | 1985 - 1993 |
| Dohme | 1983 - 1993 |
| Thiemann | 1985 - 1994 |

{¶ 9} To fulfill the security condition for investing in the insurance syndicates, each intervenor elected to provide the required thirty-percent security by way of a letter of credit. To that end, each intervenor contracted with Star Bank (or its predecessor) to issue irrevocable letters of credit payable in pounds sterling with the Council of Lloyd's as beneficiary. Because the Council required letters of credit to be payable in England, Star Bank requested Barclays to confirm each of intervenor's letters of credit. Star Bank sent the letters of credit to Barclays in London and Barclays confirmed each letter of credit by issuing a separate confirming document. The confirmation letters of credit required only that the claim be presented prior to the stated expiration date and in conformity with applicable international credit practices.

*The Underlying Suits*

{¶ 10} Between 1988 and 1991, the syndicates in which intervenors had invested experienced underwriting losses. To cover the losses, the Council made cash calls upon the intervenors and then draws against each intervenor's confirmation letter of credit. As of January 1995, intervenors had received additional cash calls by the Council for 1991 underwriting losses, and further draws against the confirmation letters of credit were imminent.

{¶ 11} Intervenors filed suit in respondents' common pleas court against Star Bank and Barclays, alleging that Sturge/Falcon had sold securities to them in violation of the Ohio Securities Act.[3] Each complaint requested a temporary restraining order to stop Star Bank and Barclays from paying any funds pursuant to the letters of credit. The complaints also requested preliminary and permanent injunctions. Respondents granted the temporary restraining order enjoining both

---

3. Initially, three of the four suits were brought against Star Bank. However, each was amended to bring Barclays in as a defendant and to extend the temporary restraining order to Barclays.

Star Bank and Barclays from paying on, making a demand for payment on, or assisting in collection of, the letters of credit.

{¶ 12} Barclays sued for a writ of prohibition from this court to enjoin respondents from further exercising judicial power in the underlying suits because, Barclays asserts, respondents do not have subject matter jurisdiction. After Barclays initiated the original action in this court, all four complaints were voluntarily dismissed. The intervenors then refiled two new cases, *Thurner II* and *Rorie II*, and again alleged that Sturge/Falcon had sold securities to them in violation of the Ohio Securities Act. The new complaints also alleged that the Council had engaged in "rampant and pervasive fraud" towards the intervenors by recruiting Names without informing the Names of massive latent or "long-tail" liabilities in the market because of asbestos and pollution-related losses. Based on this, intervenors alleged that Barclays and Star Bank had a duty to review the evidence of fraud and to withhold payment on the letters of credit.

{¶ 13} Barclays amended its complaint for writ of prohibition and included the two new cases which intervenors had filed.

———————————

*Squire, Sanders & Dempsey, John R. Gall, Pamela H. Thurston* and *Philomena M. Dane,* for relator Barclays Bank PLC.

*Dinsmore & Shohl* and *John W. Beatty*, for intervening relator Star Bank, N.A.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip L. Zorn, Jr.,* Assistant Prosecuting Attorney, for respondents.

*Cohen, Todd, Kite & Stanford, Donald J. Rafferty* and *Michael R. Schmidt,* for intervenors William A. Thurner, Howard Thiemann, and estate of Arthur Dohme, Verna K. Dohme, executor.

*Lindhorst & Dreidame Co., L.P.A.,* and *James M. Moore,* for intervenors Thomas Tilsley, Durwood G. Rorie, and V. Snowden Armstrong.

COOK, J.

{¶ 14} The critical issue in this case is whether a court has subject matter jurisdiction to issue an injunction to stop payment on a letter of credit when the beneficiary of that letter of credit is not a party to the suit. Because respondents lack such jurisdiction, we find prohibition appropriate, and issue the writ.

{¶ 15} Prohibition is an extraordinary writ and we do not grant it routinely or easily:

"'For a writ of prohibition to issue, a relator must ordinarily establish: (1) that the court against whom it is sought is about to exercise judicial power, (2) that the exercise of such power is unauthorized by law, and (3) that, if the writ is denied, he will suffer injury for which no other adequate remedy exists.'" *State ex rel. Connor v. McGough* (1989), 46 Ohio St.3d 188, 189, 546 N.E.2d 407, 408, quoting *State ex rel. Largent v. Fisher* (1989), 43 Ohio St.3d 160, 161, 540 N.E.2d 239, 240; and *State ex rel. Fyffe v. Pierce* (1988), 40 Ohio St.3d 8, 9, 532 N.E.2d 673, 674. Intervenors concede that the first prong of the prohibition tripartite test is established. In this case, the dispute centers on the second part of the test—whether the respondents' exercise of judicial power is unauthorized by law.

{¶ 16} As to this central dispute, Barclays and intervenors agree that fraud by the beneficiary in the underlying transaction would permit a court to enjoin payment on the letter of credit.[4] In their new cases, intervenors have alleged fraud in the underlying transaction on the part of Lloyd's. Barclays asserts, however, that respondents lack subject matter jurisdiction because intervenors have not named Lloyd's, the beneficiary of the letters of credit, as a defendant in the underlying

---

4. In this case, we do not reach the question of whether "fraud in the transaction" in R.C. 1305.13(B) refers to fraud between the customer and the beneficiary in the underlying investment transaction or to fraud in the separate transaction of presentment of a draft for payment

cases; therefore, no case or controversy exists, as there are no adverse litigants. Intervenors, on the other hand, contend that because R.C. 1305.13(B)(2) specifically authorizes a court to enjoin payments under letters of credit on the basis of fraud, respondents have subject matter jurisdiction.

{¶ 17} First we note, as respondents correctly argue, that Ohio courts of general jurisdiction have authority to determine their own jurisdiction. *State ex rel. Connor v. McGough* 46 Ohio St.3d at 189-190, 546 N.E.2d at 408; *Ohio Dept. of Adm. Serv., Office of Collective Bargaining v. State Emp. Relations Bd.* (1990), 54 Ohio St.3d 48, 562 N.E.2d 125. In the interest of judicial economy, however, we recognize an exception to this general rule. "When a court patently and unambiguously lacks jurisdiction to consider a matter, a writ of prohibition will issue to prevent assumption of jurisdiction regardless of whether the lower court has ruled on the question of its jurisdiction." Ohio Dept. of Adm. Serv., 54 Ohio St.3d 48, 562 N.E.2d 125, at syllabus. Thus, to issue the writ of prohibition, we must find that respondents patently and unambiguously lacked jurisdiction. In determining whether respondents lack subject matter jurisdiction, we must consider the nature of the intervenors' underlying action.

{¶ 18} In Ohio, standby letters of credit are governed by R.C. Chapter 1305. Two interrelated features of the letter of credit make it uniquely valuable in the marketplace, especially in the international market. By issuing a standby letter of credit, a bank substitutes its financial integrity as a stable credit source for that of its customer, and because of the issuing bank's primary commitment, the bank's obligation to pay is independent of the underlying transaction between the beneficiary and the bank's customer. R.C. 1305.13 (Official Comment 1 to UCC 5-114). See, *e.g.*, *Centrifugal Casting Machine Co. v. Am. Bank & Trust Co.* (C.A.10, 1992), 966 F.2d 1348, 1352; *Aetna Life & Cas. Co. v. Huntington Natl. Bank* (C.A.6, 1991), 934 F.2d 695, 699, and *Ground Air Transfer, Inc. v. Westates Airlines, Inc.* (C.A.1, 1990), 899 F.2d 1269, 1272. The "independence principle"

requires a bank issuing a standby letter of credit to honor any draw by the beneficiary that conforms to the express terms of the letter. See, *e.g.*, *Centrifugal Casting Machine Co*., 966 F.2d at 1352; *Aetna Life & Cas. Co*., 934 F.2d at 699, and *Ground Air Transfer*, 899 F.2d at 1272. The great utility of the letter of credit derives from the fact that the relationships between the customer, the bank, and the beneficiary are utterly independent of one another.

{¶ 19} As its basic premise, R.C. 1305.13 adopts the independence principle: "(A) An issuer must honor a draft or demand for payment that complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and beneficiary." R.C. 1305.13(B)(2), upon which intervenors base their cause of action, states the only pertinent exception to this rule.

{¶ 20} Where "documents appear on their face to comply with the terms of a credit," but where those documents in reality are "forged or fraudulent or there *is fraud in the transaction,*" an issuer is required to pay if the draft is presented by the equivalent of a holder in due course. (Emphasis added.) R.C. 1305.13(B)(1). In all other cases, "[a]n issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery, or other defect not apparent on the face of the documents *but a court of appropriate jurisdiction may enjoin such honor.*" (Emphasis added.) R.C. 1305.13(B)(2). This statute does not authorize a court to enjoin a letter of credit unless it has appropriate jurisdiction.

{¶ 21} The Constitution of Ohio sets forth the basic limitations on the jurisdiction of the common pleas courts. Section 4(B), Article IV of the Ohio Constitution vests the common pleas courts with "such original jurisdiction over all justiciable matters * * * as may be provided by law." This court, in interpreting Section 4(B), Article IV, has declared the following:

"It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by

specific facts and render judgments which can be carried into effect." *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371, 372. Actual controversies are presented only when the plaintiff sues an adverse party. This means not merely a party in sharp and acrimonious disagreement with the plaintiff, but a party from whose adverse conduct or adverse property interest the plaintiff properly claims the protection of the law. Thus, we hold that the presence of a disagreement, however sharp and acrimonious it may be, is insufficient to create an actual controversy if the parties to the action do not have adverse legal interests. Cf. *Diamond v. Charles* (1986), 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48, 57.

{¶ 22} Turning to the context of this case, we find that in an action to enjoin payment on a letter of credit, the only entity with the motive and means to oppose an allegation of fraud in the transaction is the beneficiary. A beneficiary is the only entity that has an adverse legal interest. Today, we hold that an action to enjoin payment under a letter of credit or a confirmation of a letter of credit must include the beneficiary as a party in order to present an actual controversy within the common pleas court's subject matter jurisdiction.

{¶ 23} In this case, intervenors contend that Barclays and Star Bank are adverse parties because the banks have an obligation to refuse to pay because of Lloyd's massive fraud, but the banks nonetheless are determined to continue to pay. Intervenors' argument presents a sharp and acrimonious disagreement, but intervenors did not sue the alleged wrongdoers. Intervenors' allegations of Lloyd's wrongdoing are the sole basis upon which relief can be granted and intervenors seek to foreclose Lloyd's right to payment under the letters of credit. Thus, respondents patently and unambiguously did not have subject matter jurisdiction in the underlying cases because intervenors did not sue the beneficiary of the confirmation and standby letters of credit, Lloyd's of London.

**{¶ 24}** Finally, as to the third prong of the prohibition test, Barclays and Star Bank must also demonstrate that they have no adequate remedy at law. Three intervenors claim that Barclays and Star Bank are asserting nothing more than a money issue which is easily quantifiable. In this case, however, we find prohibition an appropriate remedy. When a lower court totally lacks jurisdiction, "'"the availability or adequacy of a remedy of appeal to prevent the resulting injustice is immaterial to the exercise of supervisory jurisdiction by a superior court to prevent usurpation of jurisdiction by the inferior court."'" *State ex rel. Largent v. Fisher* (1989), 43 Ohio St.3d 160, 163, 540 N.E.2d 239, 241, *quoting State ex rel. Racing Guild of Ohio v. Morgan* (1985), 17 Ohio St.3d 54, 56, 17 OBR 45, 47, 476 N.E.2d 1060, 1062, quoting *State ex rel. Adams v. Gusweiler* (1972), 30 Ohio St.2d 326, 329, 59 O.O.2d 387, 388, 285 N.E.2d 22, 24.

**{¶ 25}** Respondents, having no subject matter jurisdiction in the underlying actions, are directed hereby to dismiss those actions.

*Writ allowed.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs in judgment only.

———————————