DECISION AND JUDGMENT ENTRY
{¶ 1} Attorney General Jim Petro has filed a complaint for a writ of prohibition alleging that Judge William T. Marshall lacked jurisdiction to grant a Civ.R. 60(B) motion to vacate a judgment filed by Adrian L. Rawlins in a separate criminal proceeding. Despite Judge Marshall's assertion to the contrary, Attorney General Petro has common law standing to protect the State of Ohio's interest in the administration of justice and can pursue this action. Moreover, Judge Marshall patently and unambiguously lacked jurisdiction to entertain the motion after this court had expressly ruled on the same issues the motion presented. Accordingly, we grant the writ.
 {¶ 2} In 1997, a jury found Rawlins guilty of murder with a firearm specification and the trial court sentenced him to fifteen years to life imprisonment. Rawlins appealed his conviction to this court, assigning as error the trial court's refusal to give jury instructions on the lesser included offenses of involuntary and voluntary manslaughter, and the exclusion of the testimony of a psychiatric expert. In December 1998, we specifically rejected these arguments and affirmed Rawlins' conviction. See State v. Rawlins (Dec. 24, 1998), Scioto App. No. 97CA2539. The Supreme Court of Ohio did not review the case.
 {¶ 3} In May 2003, Rawlins filed a motion in the criminal case for relief from judgment under Crim.R. 57(B) and Civ.R. 60(B). The State filed its opposition to the motion, but the trial court did not rule on the motion in either 2003 or 2004. After a request by Rawlins in January 2005, newly elected Judge Marshall scheduled a hearing on the motion.[1]
 {¶ 4} At the hearing, Rawlins sought relief from his conviction based on his claim that the jury should have been given instructions on voluntary and involuntary manslaughter. The State did not object to Rawlins' Civ.R. 60(B) motion. In spite of our prior contrary ruling, which became law of the case on this issue, Judge Marshall granted Rawlins' motion with the understanding that Rawlins was going to enter into a negotiated plea. Rawlins then pled guilty to voluntary manslaughter and Judge Marshall sentenced him to a prison term of ten years. Immediately after sentencing him, Judge Marshall granted Rawlins judicial release and placed him on probation.
 {¶ 5} Shortly thereafter, Attorney General Petro filed a complaint for a writ of prohibition alleging that Judge Marshall lacked jurisdiction to grant Rawlins' motion for relief from judgment, and ultimately to release him from prison. Judge Marshall filed an answer and asserts that the attorney general lacks standing to bring the complaint.
 I. STANDING {¶ 6} Before turning to the merits of Attorney General Petro's complaint, we must address Judge Marshall's contention that Attorney General Petro lacks standing to bring this action. If the relator lacks standing, we are duty bound to dismiss the complaint. See, e.g., Cleveland ex rel. O'Malley v. White,148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, at ¶ 47.
 {¶ 7} In State ex rel. Matasy v. Morley (1986),25 Ohio St.3d 22, 23, 494 N.E.2d 1146, 1147, the Ohio Supreme Court explained the criteria for standing:
* * * a prohibition action may only be commenced by a person who is either a party to the proceeding sought to be prohibited * * * or demonstrates an injury in fact to a legally protected interest.
Attorney General Petro was clearly not a party to the proceedings below and, therefore, does not meet the first prong of the test. Although he does not explicitly argue that he has suffered any injury to a legally protected interest as a result of Judge Marshall's actions, Attorney General Petro does contend that he is attempting to protect the interest of the State of Ohio in his capacity as the chief law enforcement officer for the State. Attorney General Petro alleges that he has standing in three capacities — statutorily, as a citizen, and at common law. We consider each of these assertions.
 A. Statutory Standing {¶ 8} First, Attorney General Petro argues that R.C. 109.02
expressly authorizes him to bring this action. R.C. 109.02
states:
The attorney general is the chief law enforcement officer for the state and all its departments * * *. * * * The attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested. When required by the governor or the general assembly, the attorney general shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested. Upon the written request of the governor, the attorney general shall prosecute any person indicted for a crime.
 {¶ 9} Although R.C. 109.02 requires the attorney general to appear for the State in any case in the Supreme Court of Ohio in which the State has a direct or indirect interest, the statute makes no such provision for the attorney general's appearance in the courts of appeals. Moreover, Attorney General Petro concedes that neither the governor nor the general assembly directed him to bring this action. Therefore, Attorney General Petro does not have standing to bring this action under R.C. 109.02.
 B. Citizen Standing {¶ 10} Attorney General Petro contends that he has standing as an Ohio citizen to bring this action. Attorney General Petro relies on the Ohio Supreme Court's holding in State ex rel. OhioAcademy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451,1999-Ohio-123, 715 N.E.2d 1062, at paragraph one of the syllabus, to support his contention.
 {¶ 11} In Sheward, the Supreme Court applied a "public action" exception to the traditional standing rule, and allowed several Ohio organizations and a private individual to challenge the constitutionality of comprehensive tort reform legislation by an action in mandamus. The Court recognized that in the context of a challenge to the constitutionality of a statute, when issues "sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." Id. at 471, 715 N.E.2d 1062. However, the Court also made clear that it would "entertain a public action only `in the rare and extraordinary case' where the challenged statute operates, `directly and broadly, to divest the courts of judicial power.'" Id. at 504, 715 N.E.2d 1062.
 {¶ 12} We reject the attorney general's arguments for standing based upon Sheward for several reasons. First, Attorney General Petro is not attempting to challenge the constitutionality of a statute. Rather, he complains that Judge Marshall ignored the doctrine of law of the case. Given the widespread criticism that Sheward has generated, see, e.g., Chief Justice Moyer's catalogue of critical commentaries and opinions in his dissent in State ex rel. Ohio AFL-CIO v. OhioBureau of Workers' Comp., 97 Ohio St.3d 504, 2002-Ohio-6717,780 N.E.2d 981, at ¶ 56 et seq., and the Sheward majority's own insistence that it be used only in rare and extraordinary circumstances, we decline to expand it to this scenario.
 {¶ 13} Beyond the fact there is no constitutional challenge upon which to append the Sheward exception, Judge Marshall's decision — however erroneous — does not have the widespread effect on the citizenry as a whole that is required to invoke the "public action" exception. Although this case may determine the very important question of whether a criminal conviction can be overturned by a trial court on the same grounds an appellate court has previously rejected, we are not faced with any constitutional questions nor will our decision alleviate any widespread problems in the judicial system. In fact, the events in this case are highly unusual and may never be repeated again. The mere fact that a party seeks to raise a significant legal issue is not sufficient to warrant application of this very limited exception to the standing requirement. Rather, courts should utilize this rare exception only where the issue would have a widespread or substantial effect upon the public as a whole, and would result in serious public injury if standing were refused. See Bowers v. Ohio State Dental Bd. (2001),142 Ohio App.3d 376, 381, 755 N.E.2d 948, citing Sheward,86 Ohio St.3d at 471 and 503. See, also, Lager v. Plough, Portage App. No. 2006-P-0013, 2006-Ohio-2772, at ¶ 12-15.
 {¶ 14} Although we share Attorney General Petro's frustration that in granting Rawlins' Civ.R. 60(B) motion Judge Marshall did not follow our holding in State v. Rawlins, supra, we reject his contention that he has standing to proceed underSheward.[2]
 C. Common Law Standing {¶ 15} Attorney General Petro also asserts that he has common law standing to maintain this action because the Ohio Constitution does not specifically delineate the attorney general's authority; in the absence of constitutional restrictions, courts have recognized that the office of attorney general has all of the powers that attorneys general enjoyed at common law. Attorney General Petro contends that the common law recognized the authority of attorneys general to commence actions to vindicate the State's interest, even in the absence of an injury to that specific officer's personal or official interests. In his reply brief, the attorney general states that "[t]his action is brought to enforce the judicial scheme * * * in Ohio." Therefore, we assume that this is the interest to which he refers.
 {¶ 16} Attorney General Petro cites two cases in support of his contention that he does not need to have an individual interest to have standing in this case — State ex rel. Little v.Dayton South-Eastern Railroad Co. (1881), 36 Ohio St. 434, andState ex rel. Crabbe v. Plumb (1927), 116 Ohio St. 428, 156 N.E. 457. In Little, the attorney general filed a petition to enjoin a railroad company from obstructing a public county road. The Ohio Supreme Court noted that, prior to the adoption of the code governing public nuisances, the proper remedy was for the attorney general to file an information or bill. Little at 439. The Court also noted that the weight of authority demonstrated that the attorney general was authorized to institute public nuisance suits on behalf of the public, even without a relator. Id. at 440. In Crabbe, the attorney general brought a mandamus suit against a board of county commissioners when they failed to set apart and appropriate the sum of $1,500 to support agricultural extension work in the county as mandated by section 9921-5, General Code. The Ohio Supreme Court found that the attorney general had the authority to "institute an action in mandamus against a public officer to require him to discharge a duty placed upon him by a mandatory statute, * * *."
 {¶ 17} We believe these cases contain persuasive authority to support Attorney General Petro's position, despite the fact that neither case is identical to the facts here. Little stands for the proposition that the attorney general has common law standing to pursue nuisance actions on behalf of the state. Crabbe holds that the attorney general can institute a mandamus action when a public officer fails to comply with a mandatory statute.
 {¶ 18} Equally important legal interests are at stake here in the attorney general's efforts to obtain the common law writ of prohibition. If the attorney general can enjoin a public nuisance in the absence of an individual relator, surely the attorney general can promote the proper allocation of judicial power among Ohio's courts, notwithstanding the absence of the prosecuting attorney's participation. And if the attorney general has standing to require county commissioners to follow statutory legal duties, what rational basis can there be for denying standing to an attorney general who seeks to force a lower court to follow its common law duty concerning the doctrine of the law of the case? Rather than preventing the attorney general from acting in such circumstances, we conclude the common law demands it.
 {¶ 19} Judge Marshall focuses much of his argument against the attorney general's standing on the specter of future interloping by the attorney general in criminal prosecutions. However, those are not the facts before us. Rather than interfering directly in the criminal proceedings, the attorney general has filed a distinct civil action that seeks to prohibit a court from acting where it lacks jurisdiction to do so. While we are skeptical that the attorney general has standing to direct a criminal prosecution without a request from the appropriate authorities or an explicit statutory mandate, we do not address that question here.
 {¶ 20} Accordingly, we conclude that Attorney General Petro has common law standing to bring this action.
 II. MERITS OF PROHIBITION {¶ 21} A writ of prohibition is an extraordinary judicial writ; its purpose is to restrain inferior courts and tribunals from exceeding their jurisdiction. State exrel. Tubbs Jones v. Suster, 84 Ohio St.3d 70, 1998-Ohio-275,701 N.E.2d 1002. A writ of prohibition is customarily granted with caution and restraint, and is issued only in cases of necessity arising from the inadequacy of other remedies. Id.; see, also,State ex rel. Barclays Bank PLC v. Hamilton Cty. Court ofCommon Pleas, 74 Ohio St.3d 536, 540, 1996-Ohio-286,660 N.E.2d 458, 461 ("Prohibition is an extraordinary writ and we do not grant it routinely or easily.").
 {¶ 22} A writ of prohibition "tests and determines `solely and only' the subject matter jurisdiction" of the lower court.Tubbs Jones at 73, citing State ex rel. Eaton Corp. v.Lancaster (1988), 40 Ohio St.3d 404, 409, 534 N.E.2d 46, 52. It does not lie where the court has made a mere error in the exercise of jurisdiction, i.e., simply reached a legally incorrect result. Brooks v. Gaul, 89 Ohio St.3d 202, 203,2000-Ohio-133, 729 N.E.2d 752. But see State ex rel. News Heraldv. Ottawa Cty. Court of Common Pleas, 77 Ohio St.3d 40,1996-Ohio-354, 671 N.E.2d 5 (writ of prohibition was appropriate remedy to challenge lower court's gag order because once the order was enforced and the hearing conducted, relator would have no adequate remedy at law), and State ex rel. Connor v. McGough
(1989), 46 Ohio St.3d 188, 546 N.E.2d 407 (writ of prohibition issued where trial court had subject matter jurisdiction but patently and unambiguously lacked personal jurisdiction over the defendant, a resident of Germany).
 {¶ 23} The writ is not limited to prospective application; it is also available to correct the results of previous jurisdictionally unauthorized actions. State ex rel. Rogers v.McGee Brown, 80 Ohio St.3d 408, 410, 1997-Ohio-334,686 N.E.2d 1126. However, the writ is not available to stop enforcement of an erroneous judgment that a court having general authority over the underlying case has issued. Dubose v. Court of Common Pleasof Trumble County (1980), 64 Ohio St.2d 169, 171,413 N.E.2d 1205.
 {¶ 24} In order for a writ of prohibition to issue, the relator must establish that: (1) the lower court is about to exercise judicial or quasi-judicial powers; (2) the exercise of the power is unauthorized by law; and (3) the denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. State ex rel. Henry v.McMonagle, 87 Ohio St. 3d 543, 2000-Ohio-477, 721 N.E.2d 1051. Only requirements two and three are at issue here as Judge Marshall has clearly exercised judicial power in granting the Civ.R. 60(B) motion.
 A. Exercise of Unauthorized Power {¶ 25} The attorney general contends that Judge Marshall patently and unambiguously lacked jurisdiction to grant a Civ.R. 60(B) motion for relief in the underlying criminal case. Based upon the Supreme Court of Ohio's holding in State ex rel.Special Prosecutors v. Judges (1978), 55 Ohio St.2d 94,378 N.E.2d 162, and its progeny, we agree. In doing so, we note that Judge Marshall has not contested the merits of this action and has defended the attorney general's request for a writ solely on the basis of standing.
 {¶ 26} We have previously concluded that a court may entertain a Civ.R. 60(B) motion for relief from judgment in a criminal matter under Crim.R. 57(B). See State v. Riggs (Oct. 4, 1993), Meigs App. Nos. 503 and 506, 1993 WL 405491. Thus, the use of this mechanism in a criminal matter does not per se create a jurisdictional problem.
 {¶ 27} Civ.R. 60(B) clearly gives the trial court jurisdiction to grant relief from a final judgment. However, once a party undertakes an appeal and absent a remand, the trial court is divested of jurisdiction to take any action that is inconsistent with the appellate court's exercise of jurisdiction.Post v. Post (1990), 66 Ohio App.3d 765, 769, 586 N.E.2d 185;State ex rel. Special Prosecutors, supra, at 97.
 {¶ 28} In Special Prosecutors, the Supreme Court of Ohio granted the relator's request for a writ of prohibition to prevent the trial court from granting a motion to withdraw a guilty plea and conducting a new trial. The Court held that the trial court lost jurisdiction to grant a motion to withdraw a guilty plea and grant a new trial when the defendant lost the appeal of a conviction based upon the guilty plea. Id. at 97.
 {¶ 29} The Supreme Court further held that the trial court did not regain jurisdiction subsequent to the court of appeals' decision affirming the defendant's conviction. Id. The Court reasoned that allowing the trial court to consider a Crim.R. 32.1 motion to withdraw a guilty plea subsequent to an appeal and affirmance by the appellate court "would affect the decision of the reviewing court, which is not within the power of the trial court to do." Id. at 97-98. Thus, the court found "a total and complete want of jurisdiction by the trial court to grant the motion to withdraw [the defendant's] plea of guilty and to proceed with a new trial." Id. at 98.
 {¶ 30} The Ohio Supreme Court made a similar ruling concerning Civ.R. 60(B) motions, holding that absent a remand from the appellate court, "an appeal divests trial courts of jurisdiction to consider Civ.R. 60(B) motions for relief from judgment." See Howard v. Catholic Social Servs. of CuyahogaCty., Inc., 70 Ohio St.3d 141, 147, 1994-Ohio-219, 637 N.E.3d 890, citing State, ex rel. East Mfg. Corp. v. Ohio Civ. RightsComm. (1992), 63 Ohio St.3d 179, 181, 586 N.E.2d 105. See, also,Post, supra, at 770. Once a case has been appealed, "the trial court is divested of jurisdiction except `over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issue like contempt * * *.'" State ex rel. State Fire Marshallv. Curl, 87 Ohio St.3d 568, 570, 2000-Ohio-248, 772 N.E.2d 73, quoting Special Prosecutors at 97. Where an appellate court has already ruled on an issue in a direct appeal, a trial court's "reconsideration" of that same issue is inconsistent with the appellate court's exercise of jurisdiction and the doctrine of the law of the case. See, Hopkins v. Dyer, 104 Ohio St.3d 461,2004-Ohio-6769, 820 N.E.2d 329, at ¶ 15.
 {¶ 31} Upon further proceedings following an appellate decision on the same facts and issue, the trial court is bound to adhere to the appellate court's determination of the applicable law. See Nolan v. Nolan (1984), 11 Ohio St.3d 1,462 N.E.2d 410. The doctrine of law of the case is necessary, not only for consistency of result and the termination of litigation, but also to preserve the structure of the judiciary as set forth in the Constitution of Ohio. Article IV of the Ohio Constitution designates a system of "superior" and "inferior" courts, each possessing a distinct function. The Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals. State ex rel. Potain v. Mathews (1979),59 Ohio St.2d 29, 32, 391 N.E.2d 343, 345.
 {¶ 32} In Rawlins' direct appeal, we considered and rejected the precise issues Rawlins raised in his Civ.R. 60(B) motion for relief from judgment. We previously determined that the trial court correctly refused to instruct the jury on involuntary manslaughter and to admit Rawlins' expert testimony. Judge Marshall acted inconsistently with our authority to review the criminal conviction and contrary to the doctrine of law of the case. Accordingly, he patently lacked jurisdiction to consider Rawlins' Civ.R. 60(B) motion.
 B. Adequate Remedy {¶ 33} Since the attorney general was not a party to the criminal action and had no standing to take a direct appeal, he had no adequate remedy of law. In our view, the mere existence of a procedure whereby the prosecuting attorney or governor may, at their discretion, direct the attorney general to participate in a criminal case does not create an adequate remedy of law. Only when the prosecutor or governor exercises that discretion and directs the attorney general to proceed, would there be an adequate remedy by way of the attorney general's participation in an appeal.
 {¶ 34} More importantly, where a court patently and unambiguously lacks jurisdiction, the requirement of a lack of an adequate remedy at law need not be addressed. In such cases, the availability of alternative remedies like appeal is immaterial.State ex rel. Russo v. McDonnell, 110 Ohio St.3d 144,2006-Ohio-3459, 852 N.E.2d 145, at ¶ 22.
 III. CONCLUSION {¶ 35} We grant the writ of prohibition and hereby order Judge Marshall to vacate his entry granting Rawlins' Civ.R. 60(B) motion and related relief, including accepting the guilty plea to voluntary manslaughter. WRIT GRANTED. Costs to Respondent.
Abele, J.: Concurs in Judgment and Opinion with Attached Opinion. McFarland, J.: Concurs in Judgment and Opinion.
[1] Judge Marshall was not the original trial judge. Additionally, Mark Kuhn was sworn into office as the Scioto County Prosecuting Attorney in January 2005, replacing Prosecutor Lynn Grimshaw who held the office at the time Rawlins was convicted and when Rawlins filed his motion.
[2] Our concern is institutional: a trial court is obligated to follow the holdings of the court of appeals and the doctrine of law of the case. In this instance, it is possible that Judge Marshall and the prosecuting attorney were not aware of our prior holding in light of the fact they were not in their respective offices at the time we issued the decision. See footnote 1. However, it became law of the case in any event.