[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3 352.]

THE STATE EX REL. EATON CORPORATION, CROSS-APPELLANT AND CROSS-APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, CROSS-APPELLEE; BAKER, CROSS-APPELLEE AND CROSS-APPELLANT.

[Cite as *State ex rel. Eaton Corp. v. Indus. Comm*., 1997-Ohio-36.]

*Workers' compensation—Industrial Commission's award of permanent total disability compensation supported by "some evidence," when—Temporary total disability compensation—Continuance of benefits erroneous, when— Finding of permanency of the condition—Commission policy to the contrary, invalid—Recovery from Surplus Fund.*

(No. 95-743—Submitted September 9, 1997—Decided December 3, 1997.)

CROSS-APPEALS from the Court of Appeals for Franklin County, No. 93APD10-1447.

————————————

{¶ 1} Cross-appellant/claimant Frankie L. Baker was injured in September 1977 while employed as a junior inspector for cross-appellant Eaton Corporation, a self-insured employer. Her workers' compensation claim was allowed for "acute cervical muscle strain with right brachial neuritis; chronic muscle strain and sprain of right trapezius and bursitis of right scapula; anterior cervical interbody arthrodesis C5-6." She last worked in August 1982, after which time she began receiving temporary total disability compensation. On September 15, 1986, Eaton moved cross-appellee Industrial Commission of Ohio for permission to terminate claimant's temporary total disability compensation. On October 21, 1986, claimant responded with a motion for permanent total disability compensation.

{¶ 2} On October 24, 1986, a district hearing officer issued this order:

"* * * The District Hearing Officer further finds that claimant's temporary disability may now be permanent.

"Pursuant to Industrial Commission Resolution dated July 26, 1982, and *State ex rel. Ramirez v.* [*Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586], it is hereby ordered that the claimant continues to be temporarily and totally disabled.

"The Hearing Officer, in making this finding of temporary total disability, has taken the following evidence into consideration:

"Dr. Weaver, State Examiner's finding indicating that the claimant is substantially unable to perform former job duties and condition may now be permanent."

{¶ 3} That order was administratively affirmed.

{¶ 4} After a series of hearings unrelated to this case, claimant's permanent total disability motion was finally heard on August 27, 1992. Among the evidence before the commission were three reports from the claimant's attending physician, Dr. K.A. Zacour. The October 17, 1986 report stated:

"I feel the above patient is permanently disabled, secondary to acute cervical muscle strain with right brachial plexus neuritis. She also has a chronic sprain of her right trapezius, bursitis of her right scapula and degenerative disease of C-5 and C-6. * * *"

{¶ 5} One month later, Dr. Zacour completed two questionnaires. In a questionnaire to the Bureau of Workers' Compensation, Dr. Zacour listed the allowed conditions. He stated that claimant could do no work due to "chronic back pain." In a questionnaire prepared by Dr. Zacour for Eaton on the same day, he attributed part of claimant's shoulder and neck symptomatology to a nonallowed degenerative condition.

{¶ 6} Claimant was also examined by commission specialist Dr. William G. Kraus, who reported:

"*COMPLAINTS*: At the present time, claimant complains of an intermittent occipital and right parietal headache, as well as an almost constant,

aching pain in the posterior cervical region and with an increased pain on extreme rotation of the cervical spine as well as on flexion and extension of the cervical spine. She also complains of pain in the region of the right scapula. * * * She complains of a restriction of abduction and elevation of her right shoulder with pain on the extremes of motion. * * *

"*EXAMINATIONS*: [Claimant] * * * sits with her head and neck tilted to the left. There is marked tenderness over the posterior cervical spine. There is a healed, lower anterior lateral scar at the base of the neck. There is a marked restriction of cervical spine motion with zero hyperextension, 30 [degrees] of flexion and zero rotation to the right and 45 [degrees] rotation to the left. Pain was present on the extremes of these motions, and marked paravertebral muscle spasm was palpable in the cervical paraspinal musculature. Examination of her right shoulder revealed marked tenderness over the medial border of the right scapula as well as in the right suprascapular region. There was a restriction of abduction and elevation of the right shoulder with marked pain on attempted motion. * * * There was weakness of grasp function of the right hand. * * * There was no muscle atrophy. Her reflexes were reduced but equal in her upper and lower extremities. There was a reduced sensation in the right upper extremity but not following any definite nerve root distribution. Upper extremities were normal. X-rays of the cervical spine revealed a fusion of the bodies of the C4 and C5 segments. X-rays of the right shoulder were negative.

"*DISCUSSION*: Claimant sustained an acute strain of her cervical spine and right shoulder, now chronic, and with a herniated cervical intervertebral disc. In addition, she developed a secondary brachial neuritis with a bursitis of the right scapula. She has undergone a cervical laminectomy and spine fusion without significant improvement and is now required to use a cervical traction at home on a regular basis and is required to wear a cervical collar as well as utilize a transcutaneous nerve stimulator for partial relief of her symptom[a]tology.

"*OPINION*:  It is my present opinion that this claimant is now permanently and totally disabled insofar as the performance of any sustained remunerative employment on the basis of the allowed conditions and their complications under Claim No. 626694-22, and, within reasonable medical probability, I do not believe she can be rehabilitated."

{¶ 7} The commission granted claimant permanent total disability compensation, finding that she was medically incapable of sustained remunerative employment.  That order was based on the reports of Drs. Kraus and Zacour.

{¶ 8} In late 1993, Eaton filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging, among other things, that the commission abused its discretion in awarding permanent total disability compensation and, earlier, in awarding temporary total disability compensation subsequent to the declaration of permanency.  The appellate court upheld the award of permanent total disability compensation, but vacated the award of temporary total disability compensation.  The court ordered the commission to reimburse Eaton from the state Surplus Fund for temporary total disability compensation paid beyond October 24, 1986, and also held that there was to be no offset of funds against future compensation to the claimant.

{¶ 9} This cause is now before the court upon cross-appeals as of right.

_____

*Willacy & LoPresti, Aubrey B. Willacy* and *M. Scott Young*, for cross-appellant and cross-appellee Eaton Corporation.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for cross-appellee Industrial Commission.

*Davis & Associates* and *Kenneth R. Davis*, for cross-appellant and cross-appellee Frankie Baker.

_____

*Per Curiam.*

{¶ 10} Two distinct compensation awards are at issue. Claimant contests the vacation of temporary total disability compensation paid October 25, 1986 to August 27, 1992. Eaton objects to the award of permanent total disability compensation. We reject both challenges.

{¶ 11} The commission found claimant to be medically incapable of sustained remunerative employment and, as a result, properly dispensed with nonmedical analysis. See *State ex rel. Lawrence v. Am. Lubricants Co.* (1988), 40 Ohio St.3d 321, 533 N.E.2d 344. In awarding permanent total disability compensation, it relied on reports from Drs. Zacour and Kraus — reports which Eaton claims are not "some evidence" supporting the payment of compensation. Eaton's assertion is unpersuasive.

{¶ 12} Dr. Kraus unequivocally stated that claimant could not do sustained remunerative employment due to the allowed conditions. Eaton nevertheless challenges his report.

{¶ 13} Eaton initially criticizes Dr. Kraus for not discussing claimant's nonallowed degenerative condition and for not specifically excluding it from his disability assessment. This criticism is meritless for two reasons. First, a doctor is not required to expressly state that a nonallowed condition was not factored into his/her impairment assessment. It is enough for the doctor to attribute the impairment to the allowed conditions. Second, as the court of appeals wrote, "Since Dr. Kraus, in his examination, did not indicate he found any evidence of such disease, he could not be expected to comment on it, and his failure to do so does not call into question the value of his report as some evidence to support a finding of permanent total disability." Contrary to Eaton's representation, Dr. Kraus is not bound by Dr. Zacour's opinion that claimant's condition had a degenerative component. Dr. Kraus was an examining, not reviewing, physician and was, therefore, bound only by his own findings, not the findings of others.

**{¶ 14}** In this same vein, Eaton argues that Dr. Kraus's reference to claimant's "allowed conditions *and their complications*" (emphasis added) is so suggestive of inclusion of nonallowed conditions as to merit the report's disqualification. This argument, too, fails. Nothing in the report suggests that by "complications" Dr. Kraus meant nonallowed conditions. Dr. Kraus's report never referred to any nonallowed conditions. To the contrary, it discussed in considerable detail the symptomatology arising from the allowed conditions. As the referee aptly observed:

"While Dr. Kraus does not specify in his report what he means by the *complications* of the allowed conditions of the claim, this does not necessarily mean that Dr. Kraus relied upon nonallowed conditions to support his finding. In his report, Dr. Kraus extensively discusses the pain resulting from claimant's industrial injury and the treatments that have been rendered to alleviate the pain. Dr. Kraus also extensively discusses how the industrial injury limits [claimant's] ranges of motion with respect to her right shoulder and how there is reduced sensation in the right upper extremity. These are apparently the complications that Dr. Kraus is referring to when he states that the allowed conditions and *their complications* render the claimant unable to perform any sustained remunerative employment. There is simply no other evidence in Dr. Kraus's report, and none that relator has pointed out, to indicate that the word *complications* refers to any other matter. Under such circumstances, Dr. Kraus's reference to *complications* need not be a reference to nonallowed conditions of the claim." (Emphasis *sic*.)

**{¶ 15}** Eaton also apparently advocates different standards of review for claims allowed for internal as opposed to external ailments. Eaton seems to assert that certain conditions demand certain diagnostic tests, the absence of which should disqualify the report. We reject this argument, since Eaton is effectively asking us to second-guess a doctor's medical expertise by substituting our judgment for that of the doctor as to what medical procedures are necessary.

**{¶ 16}** Dr. Kraus's report is, therefore, "some evidence" supporting the commission's award of permanent total disability compensation.

**{¶ 17}** The second issue before us involves the commission's award of temporary total disability compensation from October 25, 1986 to August 27, 1992. When a claimant's condition reaches maximum medical improvement ("MMI") or becomes permanent, temporary total disability compensation is precluded. See *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586; R.C. 4123.56. For many years, the commission—in response to the long interval between the filing and adjudication of permanent total disability motions—routinely extended temporary total disability compensation to claimants awaiting permanent total disability adjudication whose conditions had reached MMI. The present claimant received nearly six years of temporary total disability compensation pursuant to that policy.

**{¶ 18}** In 1988, we invalidated the commission's practice. See *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 534 N.E.2d 46. Claimant concedes that her award of temporary total disability compensation was inconsistent with the declaration of her condition's permanency. She nevertheless vigorously opposes her employer's attempt to have the award overturned.

**{¶ 19}** Claimant asserts that laches prevents Eaton from challenging the award of temporary total disability compensation. This assertion is incorrect. Laches is " 'an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.' " *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 135, 472 N.E.2d 328, 329. That prejudice, moreover, must be *material* prejudice. *Id.* at 35-36, 15 OBR at 135, 472 N.E.2d at 329. Because claimant asserts no such prejudice, her argument cannot be sustained.

**{¶ 20}** Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____