[Cite as *King v. King*, 2019-Ohio-722.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Denise F. King, | : | |
| Plaintiff-Appellee, | : | No. 18AP-84 |
| | | (C.P.C. No. 03DR-3187) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| George R. King, | : | |
| Defendant-Appellant. | : | |

---

# D E C I S I O N

### Rendered on February 28, 2019

---

**On brief**: *Jon M. Cope, Attorney at Law*, and *Jon M. Cope*, for appellee. **Argued**: *Jon M. Cope*.

**On brief**: *Grossman Law Offices, John H. Cousins, IV*, and *Anthony R. Auten*, for appellant. **Argued**: *John H. Cousins, IV*.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BROWN, J.

{¶ 1} George R. King ("Roger"), defendant-appellant, appeals from the judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, in which the court denied appellant's objections to a magistrate's order and granted the objections of Denise F. King ("Denise"), plaintiff-appellee.

{¶ 2} In May 2006, Roger and Denise divorced pursuant to an agreed divorce decree. Pursuant to a decision from an arbitration panel, Roger was required to pay Denise $150,000 per year in spousal support, payable in installments of $4,200 per month and $24,900 per quarter. The court retained jurisdiction to modify the amount and duration of spousal support.

{¶ 3}    In September 2009, via e-mail, Roger requested from Denise, and Denise agreed to, a four-month, 10 percent temporary reduction in the monthly and September 2009 quarterly spousal support payments, as well as a deferral of the September 2009 quarterly support payment until December 16, 2009, subject to Roger providing proof of a 10 percent drop in income for 2009. Roger confirmed her acceptance via e-mail and added that if the downward trend in his income continued, he would ask for a permanent reduction in his support payments. He acknowledged the terms were temporary in nature.

{¶ 4}    In March 2010, Roger asked Denise for a 15 percent reduction in support for the remainder of 2010 and a delay of the September quarterly payment until December 15, 2010. The parties exchanged e-mails for several months on the issue. In a July 2010 e-mail, Roger indicated he was seeking a support reduction for the rest of 2010 through April 2011 and was not requesting a deferral. In a July 29, 2010 e-mail, Denise indicated she would agree to reduce spousal support payments by 10 percent for the remainder of 2010. Toward the end of 2010, Denise sought from Roger, via e-mails, the outstanding past due funds from their first agreement and stated in a January 2011 e-mail the original court order specified amounts he was to pay.

{¶ 5}    In a November 26, 2011 letter, Roger indicated that his income had decreased and asked for a decrease in the support payment to $90,000 for 2012.

{¶ 6}    In a January 6, 2012 e-mail, Denise proposed Roger pay spousal support of $102,242 per year. After Denise declined to accept Roger's counterproposal that he pay $84,000 per year, in a January 24, 2012 e-mail, Denise agreed to his proposal of payments of $3,500 on the 15th and $3,500 on the 30th of each month. Thereafter, Roger paid Denise according to those terms.

{¶ 7}    In a January 11, 2013 letter, Roger asked Denise for another modification of spousal support to $75,000 per year. In a January 20, 2013 e-mail, Denise denied Roger's request and indicated her desire to keep the current payment.

{¶ 8}    In a January 2, 2014 letter, Roger told Denise he would be retiring on or before June 30, 2014 and his annual compensation had been further reduced. On January 12, 2014, Denise responded that she really needed the same payments for another year. Subsequently, Denise asked Roger for his tax filings back to 2005 and explained he

was not meeting his obligations and not paying the court-ordered amount, but if they shared financial information, they may be able to work out a solution.

{¶ 9}   In an April 13, 2014 letter, Roger informed Denise that he was retiring on June 30, 2014. Denise responded in a May 1, 2014 e-mail that there existed a court order, and if he wanted to change that amount, they could exchange tax information as previously suggested.

{¶ 10} On May 28, 2014, Roger filed a motion to modify spousal support. On June 13, 2014, Denise filed a motion for contempt and request for sanctions, asserting that Roger had not paid the amounts ordered.

{¶ 11} On January 28 and 29, 2015, the magistrate held a hearing. The parties stipulated to the amounts Roger had paid from 2009 to 2014. Denise claimed Roger owed her $185,201 through June 30, 2014.

{¶ 12} On May 11, 2016, the magistrate issued a decision, in which the magistrate recommended the court terminate Roger's spousal support as of July 1, 2014, and the court deny Denise's motion for contempt. The magistrate noted any spousal support ordered prior to June 1, 2014 was still due and owing. The trial court adopted the magistrate's decision the same day. Neither party filed objections or an appeal.

{¶ 13}  On June 20, 2016, Denise filed another motion for contempt, claiming Roger had failed to make any payments on the $185,201 arrearage she claimed he owed. Roger filed a motion to dismiss asserting Denise's motion for contempt was precluded by res judicata.  On October 20, 2016, the magistrate filed an order denying Roger's motion to dismiss.  On October 31, 2016, Roger filed a motion to set aside the magistrate's order.

{¶ 14}  On December 8, 2016, Denise filed a motion to liquidate the arrearage.

{¶ 15}  After a hearing, the magistrate issued a decision on February 27, 2017 in which the trial court denied Roger's motion to set aside. The trial court rejected Roger's res judicata argument, finding the magistrate's May 11, 2016 decision did not resolve the arrearage accumulated prior to July 1, 2014.

{¶ 16}  After a hearing, on June 23, 2017, the magistrate denied Denise's motion for contempt, in part, finding Roger was not in contempt, but ordering Roger to pay $172,710 for past due spousal support. The magistrate also granted Denise's motion to liquidate and ordered Roger to pay $14,392.50 per month until the amount due was paid in full.

{¶ 17} Roger filed objections, claiming res judicata, laches, and law of the case barred Denise's motion for contempt and motion to liquidate arrearage. Denise also filed objections asserting the magistrate should have found Roger in contempt and ordered him to pay the full $172,710 immediately.

{¶ 18} On February 2, 2018, the trial court adopted the magistrate's decision, overruled Roger's objections, and sustained Denise's objections. The court found the magistrate's May 11, 2016 decision included an order for Roger to pay the arrearages. Roger appeals the judgment of the trial court, asserting the following four assignments of error:

> [I.] THE TRIAL COURT ERRED AND VIOLATED THE DOCTRINE OF *RES JUDICATA* BY GRANTING APPELLEE'S MOTIONS FOR CONTEMPT, LIQUIDATION OF ARREARAGES, AND ATTORNEY FEES.
>
> [II.] THE TRIAL COURT VIOLATED THE LAW-OF-THE-CASE DOCTRINE BY REFUSING TO ADHERE TO ITS PRIOR RULINGS THAT RELIEF WAS BARRED BY THE DOCTRINES OF WAIVER AND LACHES.
>
> [III.] EVEN IF THE TRIAL COURT WERE PERMITTED TO RELITIGAGE THE ISSUE OF LACHES, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT THE DEFENSE OF LACHES DID NOT APPLY.
>
> [IV.] EVEN IF THE TRIAL COURT WERE PERMITTED TO RELITIGATE THE ISSUE OF WAIVER, THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT APPELLEE "REVOKED" HER WAIVER.

{¶ 19} We address Roger's first, second, and third assignments of error together. Roger argues in his first assignment of error the trial court erred and violated the doctrine of res judicata when it granted Denise's motions for contempt, liquidation of arrearages, and attorney fees. Roger argues in his second assignment of error the trial court erred when it refused to adhere to its prior rulings that relief was barred by waiver and laches. Roger argues in his third assignment of error that, even if the trial court could redetermine the issue of laches, the court erred when it found the defense of laches did not apply.

{¶ 20} "The applicability of the doctrine of res judicata presents a question of law," and is therefore reviewed under a de novo standard. *Daniel v. Williams*, 10th Dist. No. 13AP-155, 2014-Ohio-273, ¶ 18. In *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St.3d

449, 2010-Ohio-606, ¶ 21, the Supreme Court of Ohio summarized the doctrine of res judicata as follows:

> In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 6, 862 N.E.2d 803. "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action," whereas issue preclusion, or collateral estoppel, "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 1998 Ohio 435, 692 N.E.2d 140; see *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 1999 Ohio 91, 712 N.E.2d 713.

{¶ 21} Res judicata applies where: "(1) there was a prior valid judgment on the merits; (2) the second action involved the same parties as the first action; (3) the present action raises claims that were or could have been litigated in the prior action; and (4) both actions arise out of the same transaction or occurrence." *Reasoner v. Columbus*, 10th Dist. No. 04AP-800, 2005-Ohio-468, ¶ 5.

{¶ 22} "Laches is 'an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.' " *State ex rel. Eaton Corp. v. Indus. Comm.*, 80 Ohio St.3d 352, 356 (1997), quoting *Connin v. Bailey*, 15 Ohio St.3d 34, 35 (1984). Because laches is predominately a factual question for a trial court to resolve according to the circumstances of each case, an appellate court will only reverse a trial court's decision regarding the application of laches if the trial court abuses its discretion. *Lewis & Michael Moving and Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 10th Dist. No. 05AP-662, 2006-Ohio-3810, ¶ 40-41.

{¶ 23} "Waiver is the voluntary surrender or relinquishment of a known legal right by agreement, or a failure to act upon a right plainly indicating an intention not to claim such right." *Meyer v. Chagrin Falls Exempted Village School Dist. Bd. of Edn.*, 9 Ohio App.3d 320, 324 (8th Dist.1983). "[W]aiver of a contract provision may be express or implied." *Natl. City Bank v. Rini*, 162 Ohio App.3d 662, 2005-Ohio-4041, ¶ 24 (11th Dist.),

citing *Griffith v. Linton*, 130 Ohio App.3d 746, 751 (10th Dist.1998). When a party to a contract offers, by word or action, a waiver of certain duties under the contract, other parties who change their position as a result of the waiver may enforce the waiver. *Andrews v. Ohio State Teachers Retirement Sys.*, 62 Ohio St.2d 202, 205 (1980). The party asserting the existence of a waiver must prove the waiving party's clear, unequivocal, and decisive act to waive. *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 685, 2006-Ohio-3492, ¶ 28 (8th Dist.). Whether a party's inconsistent conduct amounts to a waiver involves a factual determination to be resolved by the trier of fact. *Lamberjack v. Priesman*, 6th Dist. No. 92-OT-006 (Feb. 5, 1993); *Walker v. Holland*, 117 Ohio App.3d 775, 791 (2d Dist.1997).

{¶ 24} In the present case, Roger presents several arguments. Roger first argues that Denise's motion for contempt was barred by the claim preclusion branch of res judicata because the same issues were litigated, or could have been litigated, in her previous June 13, 2014 contempt action, and the court's May 11, 2016 judgment was a final, valid judgment on the 2014 contempt motion. Roger claims that, in the May 11, 2016 judgment, the trial court denied the motion for contempt and did not order a liquidation of the claimed arrearage. Roger asserts that in both the first and second contempt motions, Denise requested the trial court order him to pay her the same amount of spousal support between 2009 and 2014 and liquidate the same arrearage. Roger notes Denise had the opportunity to appeal the trial court's 2016 judgment denying her first contempt motion but failed to do so.

{¶ 25} Roger also argues that issue preclusion prohibited Denise from relitigating laches and waiver. Roger contends when the trial court denied Denise's contempt action on May 11, 2016, it conclusively adjudicated the issues of waiver and laches. Roger points out that, with regard to the court's finding that laches applied, the court concluded he relied to his detriment on Denise's delay and she was well aware that the full amount was not being paid because she had agreements with him to pay lesser amounts. Roger also asserts that, with regard to the court's finding that waiver applied, the court concluded Denise relinquished her ability to enforce the payment of the full amount of support by agreeing via e-mails that she assented to a lower support amount and her conduct appeared for an extended period to be inconsistent with the intent to only temporarily waive full support.

Roger also contends that, accordingly to the May 11, 2016 judgment, both wavier and laches extinguished Denise's claim to any underpayments of spousal support from 2009-2014, and the law-of-the-case doctrine prohibited the trial court from relitigating those issues.

{¶ 26} Finally, Roger argues that even if the trial court could relitigate the issue of laches, the court erred when it found that laches did not apply. Roger points out that the court found in its May 11, 2016 judgment denying Denise's first contempt action that Roger satisfied all of the necessary elements of laches, but in the June 23, 2017 decision, the magistrate determined Roger did not satisfy the element of prejudice. Roger contends Denise's 2014 and 2016 contempt actions were identical because she requested to liquidate the arrearages in both actions. He also claims the most obvious prejudice, which the trial court ignored, was his decision to forgo filing a modification with the court in 2009 when he believed the parties had agreed to permanently reduce his support.

{¶ 27} After thoroughly reviewing the record, we find Roger's arguments without merit. In the end analysis, we believe the matter is not as difficult as Roger attempts to make it seem. We agree with Denise that the May 11, 2016 decision clearly indicated Roger still owed the sums for past spousal support that he did not pay pursuant to the terms of the agreement, and the magistrate found the parties' agreements in the several years of e-mails did not serve to modify the total spousal support owed. The crux of what the magistrate found in the May 11, 2016 decision was that Roger could not be held in contempt for failing to pay such past sums based on equitable defenses. In the discussion of contempt, the magistrate found the analysis of laches in this case was not determinative of whether support was owed but only whether Roger had a defense to a finding of contempt, and, in fact, Roger clearly failed to meet his obligations of support. The magistrate went on to explain that the defenses of waiver and laches were unlikely to succeed in any future enforcement actions filed by Denise for past due spousal support sums because the focus will be on whether Roger owes past due sums and not whether enforcement of the orders is appropriate. The May 11, 2016 magistrate's decision simply did not address whether Roger should be ordered to liquidate the past sums due but focused only on whether he should be held in contempt for failure to pay such past sums, and the magistrate specifically indicated Denise's only motion before the court was the motion for contempt. The liquidation of past sums due and contempt for failing to pay such past sums are two distinct

issues, and having found that Roger should not be held in contempt, the magistrate did not address liquidation in the May 11, 2016 decision. The magistrate did briefly discuss the issue and explicitly left the door open for a future enforcement order to be filed by Denise should Roger fail to pay the past sums.

{¶ 28} We fail to see how res judicata prevented Denise from filing the second motion for contempt and seeking a liquidation order, and the issues of waiver and laches were addressed in the May 2016 decision only in the context of whether Roger should be held in contempt for failure to pay the support due in a timely manner and not in the context of whether he should be held in contempt for failure to pay the total spousal support arrearage he had accumulated. When Denise filed her second motion for contempt in June 2016, her contempt concerned Roger's failure to pay this total spousal support arrearage since the May 11, 2016 decision, which had made it clear he owed such. This issue was distinct from that litigated in the first motion for contempt. Laches was clearly inapplicable to the second motion for contempt, as there was only a one-month delay between the magistrate's May 2016 decision and Denise's June 2016 motion for contempt. In sum, Denise's two motions for contempt addressed different issues, and res judicata, waiver, and laches did not apply to prevent her filing of the second motion for contempt.

{¶ 29} Insofar as Roger raises several other arguments as to factual errors the trial court made in justifying its decision, we decline to address them, as they do not detract from our above analysis. However, we must address Roger's argument with regard to the trial court's order that he pay statutory interest on the arrearage from May 11, 2014, which Roger points out was two years before Denise filed her 2016 contempt action. We believe the date of May 11, 2014 is a typographical error, and was meant to be May 11, 2016, the date of the magistrate's decision. In Denise's cross-objections to the magistrate's May 11, 2016 decision, Denise makes the same typographical error when requesting statutory interest "as of the Magistrate's Decision of 5/11/2014." However, we are not certain this is what the trial court meant. Therefore, to the extent the trial court's judgment needs clarified/corrected to reflect the date from which statutory interest must be paid, we sustain the first assignment of error. For these reasons, we overrule Roger's second and third assignments of error. We sustain Roger's first assignment of error to the limited extent discussed above and overrule it in all other respects.

{¶ 30} Roger argues in his fourth assignment of error that, even if the court were permitted to relitigate the issue of wavier, the trial court erred when it found that Denise revoked her waiver. Roger points out that, in denying Denise's 2014 contempt motion, the court found Denise waived "her ability to enforce the payment of the full amount of support," but then inexplicably found in granting her 2016 contempt motion that she had withdrawn or revoked her waiver as to the receipt of the full amount of spousal support. (May 11, 2016 Mag. Decision at 33.) Roger asserts that, in order for Denise to revoke her waiver, he would have had to consent to the revocation, but he did not. Roger further contends that, contrary to the trial court's explanation in the 2018 decision that the waiver referred to in the 2016 decision was a waiver as to the timeliness of payments and did not constitute a waiver of payments that were still due and owing, nowhere in the 2016 decision does the magistrate limit the waiver to timeliness but, instead, stated that Denise's conduct was consistent with someone who intended to waive support on a permanent basis.

{¶ 31} Similar to our analysis with regard to the first, second, and third assignments of error, we do not believe the 2016 decision, with regard to waiver, referred to the total amount of payments due or arrearages for spousal support. Instead, the waiver addressed in the 2016 decision was in reference to whether Roger should be held in contempt for failing to pay spousal support amounts as ordered. Because the court believed Denise waived her right to the spousal support schedule as originally ordered, it found Roger was not in contempt. The magistrate in the 2016 decision believed Roger held a good-faith belief he did not have to pay the full amount of ordered support based upon his e-mail negotiations with Denise; thus, the finding of no contempt in 2016. However, despite Denise's waiver of the right to receive her full spousal support payments on the schedule as originally ordered by the court, as found in 2016, she was, nevertheless, entitled to the full amount of her originally ordered support amounts, as found in 2018. After the 2016 decision, Roger no longer had the same "good-faith" defense to the failure to pay the full amount of spousal support as ordered, as the magistrate made clear in the 2016 decision that he still owed the full amount of support. For these reasons, Roger's fourth assignment of error is overruled.

{¶ 32} Accordingly, we overrule Roger's second, third, and fourth assignments of error. We sustain Roger's first assignment of error to the limited extent discussed above

and overrule it in all other respects. We remand the matter to clarify/correct the possible typographical error discussed under Roger's first assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, in all other respects.

*Judgment affirmed and cause remanded.*

DORRIAN and HORTON, JJ., concur.

_____